Argued March 3, affirmed April 19, 1972

## TRUCK INSURANCE EXCHANGE, *Respondent,* *v.* BILL OLINGER MERCURY, INC., *Appellant.*

495 P2d 1201

*Hollis C. Ransom, Jr.*, Portland, argued the cause and filed briefs for appellant.

*Charles E. Hodges, Jr.*, Portland, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE,* and BRYSON, Justices.

HOLMAN, J.

This is a declaratory judgment proceeding in which plaintiff, an insurance company, seeks to estab-

---

* Tongue, J., did not participate in the decision of this case.

lish that it has no responsibility under a policy of automobile theft insurance it issued to the defendant, Bill Olinger Mercury, Inc., (Olinger). The case was tried to the court. Olinger appealed from a judgment that plaintiff owed it no duty under the insurance contract. The other parties to this case are not concerned with this appeal.

Plaintiff's policy insured Olinger, an automobile dealer, against loss occasioned by theft of its automobiles. However, it excluded losses which arose from "* * * embezzlement, conversion, secretion, theft, larceny, robbery or pilferage committed by any person entrusted by the insured with custody or possession of the automobile; * * *." Miller, a salesman for Olinger, removed, or caused to be removed, four of Olinger's used automobiles from the dealer's premises without authority, sold them, and pocketed the money. The parties stipulated that Miller embezzled, secreted, converted, stole and pilfered the vehicles.

The sole assignment of error is "[t]he court erred in finding that 'the autos were stolen while Miller was entrusted with custody' and further erred in failing to find that plaintiff failed to sustain its burden of proof that Miller was entrusted with custody or possession at the time when he stole the vehicles."

■ Disposition of the assignment of error involves a factual determination, and, therefore, at the outset it is important to determine whether the case should be treated as an equitable or a legal proceeding. If it is an equitable proceeding, the factual issues are tried de novo. If it is a legal proceeding, the court is bound by the trial court's factual determinations if there is sufficient evidence to sustain them. We have held that declaratory judgment proceedings to determine cover-

age under insurance policies are legal in nature rather than equitable. *May v. Chicago Insurance Company,* 260 Or 285, 490 P2d 150, 153 (1971); *Falk v. Sul America Terrestres,* 255 Or 246, 248, 465 P2d 714 (1970). Therefore, because the trier of the facts found in favor of plaintiff, the evidence must be viewed on appeal in a manner as favorable to plaintiff as the testimony will permit.

Olinger operated a large new and used automobile dealership adjacent Canyon Road, one of the principal highways leading into the city of Portland. Its extensive frontage on the highway was bisected by 93rd Street, which intersects the highway at approximately a right angle. Several hundred new and used vehicles were stored and/or displayed on Olinger's lots. During the day, the keys were left in the used vehicles which were displayed for sale so that the salesmen could start the vehicles for customers. The keys were inserted in the vehicles each morning by either the lot boy or the salesmen, or by both. In the evening, it was the duty of the salesmen to remove the keys from the vehicles and to turn them in to the office. Salesmen were expected to "keep an eye" on the vehicles, with a view to preventing damage or theft.

It was also the duty of the salesmen to align the vehicles on the used car lots in an orderly fashion and to change their relative positions often so that the public driving by would not conclude the automobiles were not selling well, which would be the case if they were to see the same cars in the same spot over a considerable period of time. Salesmen could drive the vehicles back and forth across 93rd Street from one part of the premises to the other. They had no permission, however, to drive the vehicles from the prem-

ises unless they had a customer with them to whom they were demonstrating the car. Salesmen could not permit a customer to drive a vehicle from the lot unless the salesman was with the customer. No salesman had authority to close a deal with a customer. All offers for vehicles had to be submitted to and approved by management.

One of the vehicles in question was taken from Olinger's premises when Miller, contrary to general instructions, allowed a customer to drive it from the lot and to keep it. Miller was subsequently paid for the vehicle by the customer, although no certificate of title was ever given to the purchaser. There is only circumstantial evidence concerning the manner in which the three other vehicles were taken from Olinger's premises. The evidence shows that Miller sold two of the vehicles during business hours to other automobile dealerships in or about Portland. He appeared at each of the dealerships with a vehicle and its title certificate, and the vehicle was paid for by the dealer, who thought Miller was representing Olinger. In one instance, Miller was actually driven back to Olinger's premises after the purchase by the dealer to whom the vehicle had been sold. Finally, Miller absconded with the fourth automobile, which he sold, delivering the certificate of title to Hen House Auto Sales, South Mills, North Carolina.

There is no testimony concerning the manner in which Miller secured the certificates of title which he delivered. However, there was evidence that the desk in which the certificates of title had been kept was broken into and money taken therefrom. The certificates were not missed until some weeks later, shortly after Miller disappeared.

██ It is our conclusion that there was sufficient evidence from which the trial judge could find that Miller had custody of the stolen vehicles, as contemplated by the exception to coverage in the policy in question. The policy uses the words "custody" and "possession" in the alternative. "Custody" does not rise to the dignity of "possession" within the ordinarily accepted meaning of the term. It is a term particularly descriptive of a servant's relationship to his master's goods with which the servant must deal during the course of his employment. The salesmen, including Miller, could be found to have had custody of the used vehicles as the automobiles stood upon the lots with the keys in them. By virtue of their employment, the salesmen had temporary physical control over the vehicles which put them in a position whereby they could more easily steal the cars. The salesmen were permitted to drive, handle, and demonstrate the vehicles to customers and were responsible, to a degree, for the security of the vehicles.[1]

Olinger argues that the salesmen's authority was insufficient to constitute custody but, if the salesmen were found to have had custody, such custody could

---

[1] Both sides admit they can find no cases directly in point. Olinger cites two cases, Mock v. Missouri Union Insurance Company, 328 SW2d 61 (Mo App 1959), and Havas v. Carter, 85 Nev 132, 451 P2d 711 (1969), as tangentially supporting its position that Miller, as an employee, did not have custody of the vehicles. We believe neither case is apposite. In both cases a person who could be classed as an employee of the insured absconded with the vehicle, and the court found there was insufficient evidence that such person had custody of the automobile at the time he stole it. In the first case, a person had been secured by an agent of the insured to help the agent drive a vehicle across the United States and had been given the keys to remove suitcases from the luggage compartment. He drove the vehicle away while the suitcases were being carried into a house. In the second case, the employee stole the keys and the car at night while the business was closed.

only have existed while the vehicles were on the lot, and that Miller had no permission to take the vehicles from the lot nor had he any authorized custody of them after they were removed. All that this latter argument proves is that the vehicles were *unlawfully* taken from the lot by Miller or pursuant to his unauthorized permission. That was the moment when Olinger was unlawfully deprived of his property.

■ Olinger also argues that there is insufficient evidence that the vehicles were taken *at a time* when Miller had custody. It is pointed out by Olinger that Miller had no custody of the vehicles at night when the business was closed. It is asserted by it that there is no evidence of the time when the vehicles were taken from the lot. Contrary to Olinger's contention, there is evidence from which the trial court could find that the vehicle which Miller permitted to be driven from the premises by a customer was taken during the time the business was open. The testimony and written memorandums of the purchaser are sufficient to sustain such a finding.

There is only circumstantial proof indicating the times when the three other vehicles were taken. In two instances, Miller appeared during the daytime at another dealer's premises with a vehicle. Mr. Olinger testified that a check was made at closing time each day to assure that all of the key rings were accounted for, and that he was not aware of anything having been stolen from the office other than petty cash and the certificates of title. He also testified that salesmen did not have keys to the building. There was testimony by Olinger's used car sales manager that the only instances he knew of where keys were removed from a car and the car was later stolen were those

instances in which the thief wired around the switch. There was also testimony that if a set of keys was missing at closing time, it was customary to park other vehicles in a manner so the vehicle with the missing keys could not be moved. The activity on the lot during certain business hours, when a half dozen salesmen were working, was such that it could be found that it was extremely easy to drive vehicles away at that time without detection. We have evidence that one of the vehicles was stolen in that manner. From all of the evidence, the court believes that the trial judge could draw the inference that the probabilities were that the vehicles were taken during the daytime while Miller had custody.

Olinger also argues that the vehicles, while on the lot, were not "entrusted" to Miller. In the absence of special circumstances, terms and provisions in insurance policies are to be construed in accordance with the rational import of such terms or provisions. "Entrust," as defined by Webster's New International Dictionary 855 (2d ed 1961), is "* * * to commit or surrender (something) to another with a certain confidence regarding his care, use, or disposal of it; as, to *entrust* a servant with one's goods, * * *." For the use of the same definition in construing an identical policy provision, see *Pacific Indemnity Co. v. Harrison,* 277 SW2d 256, 257, 261 (Tex Civ App 1955). *Also see State v. Ugland,* 48 ND 841, 187 NW 237, 239 (1922) and cases cited therein. "Entrust" is a term that is also particularly applicable to the relationship of master and servant.

■ It is the court's opinion that there was sufficient evidence of entrustment. The trial court could find that confidence was placed in the salesmen to care

for Olinger's merchandise in accordance with its interest. They were given responsibility for the keys and for watching over and handling their employer's merchandise while it was being sold. Miller breached the faith that was placed in him and unlawfully deprived his employer of his vehicles.

■ Olinger also argues that Miller was not entrusted with the certificates of title and that such certificates were a necessary part of Miller's scheme to steal from his employer. No title was involved in the theft of one of the vehicles. This vehicle has never been recovered even though no title was delivered. We believe Olinger's losses were occasioned principally by the theft of the vehicles, not by the theft of the title certificates, and that the trial judge could so find.

The judgment of the trial court is affirmed.