Argued May 3, affirmed August 2, petition for
rehearing denied September 5, 1973

# GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, LIMITED, *Appellant,* v. SHASKY, *Respondent.*

512 P2d 987

*Hugh B. Collins,* Medford, argued the cause for appellant. With him on the briefs were Collins, Ferris & Velure, Medford.

*Robert H. Grant,* Medford, argued the cause for respondent. With him on the brief were Grant & Ferguson, Medford.

Before O'CONNELL, Chief Justice, and MCALLISTER, DENECKE, HOLMAN, HOWELL, and BRYSON*, Justices.

---

* Bryson, J., did not participate in the decision of this case.

HOLMAN, J.

The plaintiff, General Accident Fire and Life Assurance Corporation, Ltd. (General), brought a declaratory judgment proceeding requesting that a policy issued by it to defendant (the insured) be declared not to afford uninsured motorist coverage under the circumstances of this case. The case was tried to the court without a jury and General appeals from an adjudication that the insured was afforded such coverage.

General's liability policy to the insured contained uninsured motorist coverage. At a time during the life of the policy, when the insured was riding his bicycle down the street and passing a parked pickup truck, Herring, the operator of the truck, opened the door without warning, hitting the insured. The insured was thrown to the pavement and suffered a broken hip. Herring was the holder of a liability insurance policy issued by Government Employees Insurance Co. (GEICO). Herring failed to report the accident to GEICO and, as a result, GEICO voided its coverage of Herring. *Government Employees Ins. v. Herring,* 257 Or 201, 477 P2d 903 (1970).

■ A declaratory judgment proceeding brought for the purpose of construing the coverage afforded by an insurance policy is legal in nature. Factual determinations by the trier of the facts which are supported by evidence are final. Therefore, the evidence will be viewed in a manner as favorable to the insured as the testimony will permit. *Truck Ins. Exchange v. Olinger Mercury,* 262 Or 8, 495 P2d 1201 (1972).

General first contends that its policy did not afford the insured uninsured motorist protection under

the circumstances of this case because Herring was not an uninsured motorist at the time of the accident. The policy provided that an uninsured automobile was one which did not have liability insurance "applicable at the time of the accident." Because Herring's policy with GEICO was in force at the time of the accident and the coverage was subsequently lost by Herring's failure to report his accident to GEICO, General argues that Herring had liability insurance which was "applicable at the time of the accident."

The accident in question occurred in 1965 and ORS 736.317 (2), which was then in effect, provided as follows:

> "(2) The policy * * * shall provide coverage * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * * because of bodily injury * * *."

The statute included no definition of "uninsured motor vehicles." Subsequent to the accident, ORS 736.317 was replaced by ORS 743.792 (Chapter 482, section 3, Oregon Laws 1967), which reads as follows:

> "* * * * *
>
> "(d) 'Uninsured vehicle,' except as provided in paragraph (e) of this provision, means:
>
> "(A) A vehicle with respect to the ownership, maintenance or use of which there is no collectible automobile bodily injury liability insurance or bond, in at least the amounts or limits prescribed for bodily injury or death for a policy of insurance meeting the requirements of ORS chapter 486, applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, *or with respect to which there is such collectible bodily injury liability insurance or bond applicable at the time of the ac-*

*cident but the insurance company writing the same denies coverage thereunder* or, within two years of the date of the accident, such company writing the same becomes voluntarily or involuntarily declared bankrupt or for which a receiver is appointed or becomes insolvent. \* \* \*

"\* \* \* \* \*." (Emphasis added.)

Cases which touch upon this subject fall into two categories. The first classification includes two cases in which the insurer was notified of the accident but the tortfeasor thereafter failed to cooperate with the insurer as required by the policy. Both of these cases held that the tortfeasor was an uninsured motorist under such circumstances. *Hodges v. Canal Insurance Company,* 223 So2d 630 (Miss 1969); *Vanguard Insurance Company v. Polchlopek,* 18 NY2d 376, 222 NE2d 383, 275 NYS2d 515 (1966).[1] In the second classification are those cases in which the tortfeasor's insurer became insolvent subsequent to the time of the accident. These cases are numerous and hold that under such a circumstance the tortfeasor is not an uninsured motorist. *Federal Insurance Company v. Speight,* 220 F Supp 90 (ED SC 1963); *Apotas v. Allstate Insurance Company,* 246 A2d 923 (Del 1968); *Rousso v. Michigan Educational Emp. Mut. Ins. Co.,* 6 Mich App 444, 149 NW2d 204 (1967); *Swaringin v. Allstate Insurance Company,* 399 SW2d 131 (Mo 1966); *Rice v. Aetna Casualty and Surety Co.,* 267 NC 421, 148 SE2d 223 (1966); *Hardin v. American Mutual Fire Insurance Company,* 261 NC 67, 134 SE2d 142

---

[1] There are several prior holdings by inferior courts in New York which are contrary to the holding in Vanguard Insurance Company v. Polchlopek, 18 NY2d 376, 222 NE2d 383, 275 NYS2d 515 (1966). Such cases, of course, no longer represent the New York law.

(1964); *Stone v. Liberty Mutual Insurance Company,* 55 Tenn App 189, 397 SW2d 411 (1965).[2]

We have been unable to find any cases where, as here, no notice of the accident was ever given to his insurer by the tortfeasor who is claimed to be uninsured.

■ To this court, the words "applicable at the time of the accident" are in the present context ambiguous. Is coverage ever "applicable" to an accident in the absence of notification to the insurer? Because it is arguable and requires construction, the language is ambiguous. The policy certainly was capable of being made clear if it was the intent of the parties that under the given set of circumstances there was to be no uninsured motorist coverage. Where an adhesion contract of insurance is ambiguous, it is construed against the drawer of the policy. *Chalmers v. Oregon Automobile Insurance Co.,* 262 Or 504, 500 P2d 258 (1972).

■■ In addition, the policy provision must be construed in the light of the purpose sought to be accomplished by the legislature when it enacted the uninsured motorist statute. In *Peterson v. State Farm Ins. Co.,* 238 Or 106, 393 P2d 651 (1964), we said:

"* * * It provides protection for the auto-

---

[2] There are several cases in which the definition of an uninsured vehicle has been enlarged either by statute or by the policy to include also those instances in which the tortfeasor's insurer denies coverage. These cases hold that failure of the tortfeasor's insurer because of insolvency to defend him or to pay the judgment against him amounts to effective denial of coverage and that the tortfeasor is therefore uninsured. Katz v. American Motorist Ins. Co., 244 Cal App2d 886, 53 Cal Rptr 669 (1966); Pattani v. Keystone Ins. Co., 426 Pa 332, 231 A2d 402 (1967); North River Ins. Co. v. Gibson, 244 SC 393, 137 SE2d 264 (1964); State Farm Mutual v. Brower, 204 Va 887, 134 SE2d 277 (1964).

mobile insurance policyholder against the risk of inadequate compensation for injuries or death caused by the negligence of financially irresponsible motorists * * *. In other words, the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position he would have been in if the tortfeasor had had liability insurance." 238 Or at 111-12.

In *Bowsher v. State Farm Fire Co.,* 244 Or 549, 419 P2d 606 (1966), we also said:

"The trial court held that the legislative intent in requiring certain insurance policies to provide protection for policyholders injured by operators of 'uninsured motor vehicles' should be liberally construed to the end that persons injured by uninsured motorists be protected to the limits of such policies to the same extent that they would have been protected if the tortfeasors had carried insurance. We agree. * * *." 244 Or at 552.

These two statements as applied in the present context are obviously equivocal. Subsequently, however, in *Davis v. State Farm Mutual Automobile Ins. Co.,* 264 Or 547, 507 P2d 9 (1973), we said:

"The primary purpose of such coverage, in the absence of statutory declaration or of a provision of the policy indicating otherwise, is to protect innocent victims who have been injured by financially irresponsible motorists. * * *." 507 P2d at 11.

We agree with what was said by the Court of Appeals of the State of New York in *Vanguard Insurance Co. v. Polchlopek,* 18 NY2d 376, 222 NE2d 383, 275 NYS2d 515 (1966):

"* * * Bearing that purpose in mind [protection against damages inflicted by financially irresponsible motorists], it does not seem unreasonable to hold that an insurance policy which is

disclaimed subsequent to an accident is not a policy applicable at the time of the accident. The disclaimer by Glens Falls related back to the time of the accident and left Smith uninsured against liability arising out of the accident. Smith was just as financially irresponsible as a result of the disclaimer as he would have been if he never took out a policy. * * *." 222 NE2d at 386.

There is no more reason to exclude from uninsured motorist coverage one who is injured by a person who has secured a policy which is rendered ineffective by lack of notice than there is to exclude one from coverage who is injured by a person who never has had a policy. The obvious intent was to protect innocent victims of financially irresponsible motorists. In both instances the motorists are equally financially irresponsible. The distinction between not having insurance and not having effective insurance is nebulous. We cannot attribute to the legislature an intent to make a distinction where there is no discernible reason for having one.

■ General argues that the subsequent change in the statute by the enactment of ORS 743.792 shows that the legislature did not intend coverage under the original statute or it would not have found it necessary to enact a new statute providing for coverage in the present contingency. Such an argument is not as effective as one which contends that the legislature probably did not have in mind the situation with which we are now faced, and, had it thought of the problem, it would have done what it subsequently did when it passed ORS 743.792.

■ General next contends that the insured breached his policy with General by (1) failing to render cooperation in making timely claim against Herring,

without which failure Herring would not have become uninsured and (2) failing to give General timely notice that Shasky (the insured) claimed Herring was an uninsured motorist. The first of General's contentions, as we understand it, adopts the view that if the insured had pressed his claim more vigorously against Herring, the matter would have come sooner to the attention of Herring's insurer, GEICO, and Herring's coverage would not have been lost. In the absence of the knowledge of particular circumstances which would indicate it was necessary, we know of no duty owed by an insured to its uninsured motorist insurer to take action to notify the tortfeasor's insurer that its insured has been involved in an accident resulting in injuries for which a claim will be made. This contention is obviously an afterthought on appeal.

The more serious contention is that the insured failed to notify General promptly of his claim under the uninsured motorist provision of his policy. The uninsured motorist provision contained the condition that "proof of claim" be made "as soon as practicable." The insured promptly notified General on a form provided by General that he had been involved in an accident. There was no provision in the form for any inquiry concerning uninsured motorists. Had there been, the insured could have reported only that the other party to the accident was insured since that was his current knowledge.

At the time of the accident Herring told the insured that he, Herring, was insured by GEICO. The record is silent concerning when the insured learned or should have learned there was a possibility that Herring had no effective insurance. The insured testified he first learned of it when this court's prior opinion

went down in 1970. However, we know this is not so because he must have been alerted by the time his attorney notified General in May of 1968 of the possibility of a claim. In the absence of any other evidence on the subject, it becomes important whether General has the duty of proving lack of prompt notice or whether the insured has the duty of proving that he gave notice promptly.

In *First National Bank v. Malady*, 242 Or 353, 408 P2d 724 (1966), an insurance company brought a declaratory judgment proceeding to determine coverage under its policy and the principal question was whether the insured vehicle was being used with the consent of the insured at the time of the accident. We held in such a proceeding that the burden was upon the insurer to prove lack of consent rather than upon the representatives of the occupants to prove consent. In the instant case, having contended it was not responsible because of lack of prompt notice, General has the duty of proving the lack of notice. This entails proof that the insured either knew or had reason to know, a substantial period of time prior to his giving notice in May 1968, that there was a likelihood that Herring lacked coverage. General did not so prove.

The judgment of the trial court is affirmed.

McALLISTER, J., dissents.