Argued at Pendleton May 5, affirmed in part; reversed in part
and remanded September 5, 1975

## C & B LIVESTOCK, INC., *Appellant, v.*
## JOHNS ET AL, *Respondents.*
539 P2d 645

*Harold A. Fabre* of Fabre & Ehlers, Pendleton, argued the cause and filed briefs for appellant.

*Alex M. Byler* of Corey, Byler & Rew, Pendleton, argued the cause and filed a brief for respondents.

HOLMAN, J.

This is a proceeding under the declaratory relief provisions of ORS chapter 28 to determine the rights and obligations of the parties under the terms of an alleged contract for the sale of potato waste. Defendants denied the contract as alleged by plaintiff, pleaded certain affirmative defenses and filed a counterclaim to recover for potato waste sold and delivered to plaintiff. The trial court held that the contract as alleged by plaintiff did not exist and gave

judgment for defendants on the counterclaim for $74,-314.91 as the reasonable value of the potato waste delivered to plaintiff. Plaintiff appealed.

The defendant partnership, Johns, Smith & Beamer (JS&B) and the defendant corporation, Snake River Cattle Company (Snake River) were primarily cattle feed lot operators as was plaintiff. JS&B had a contract with a potato processor, Lamb-Weston, for all the potato waste from Lamb-Weston's plants in eastern Oregon and eastern Washington. Snake River had a similar contract with Lamb-Weston for the waste produced by Lamb-Weston in Idaho. JS&B and Snake River had cross-feeding rights permitting each to feed its cattle located in a state where the waste was controlled by the other.

Lamb-Weston commenced building a new potato processing plant at Hermiston, Oregon, whereupon a dispute arose between JS&B and Lamb-Weston as to JS&B's rights to the waste from the new plant. Around this time JS&B approached plaintiff concerning the sale to plaintiff of the waste from the new plant. Plaintiff expressed a willingness to pay $1.00 per ton over JS&B's cost under its contract with Lamb-Weston but JS&B rejected this figure as being unacceptable. Subsequently, plaintiff was approached by a representative of Snake River who inquired whether plaintiff was still interested in buying the waste at a price of $1.00 per ton more than JS&B's cost. This contact resulted in a written document dated July 28, 1972, which, on its face, appears to be an agreement on these terms between Snake River and plaintiff. This is the contract which plaintiff seeks to have declared binding on both defendants even though JS&B does not appear as a party to it. Plaintiff claims that Snake River was acting as agent for JS&B as well as on its own behalf in making the alleged contract.

Defendants' position, on the other hand, is that the agreement between Snake River and plaintiff was not to be operative unless and until Snake River actually purchased from JS&B the latter's rights to the waste from the new plant. They contend that JS&B, not wishing to shoulder the burden of litigation with Lamb-Weston to establish JS&B's rights and not being sure of the extent to which it was going to feed cattle in the future, had offered to Snake River for $150,000 any rights it might have under its existing contract with Lamb-Weston to the potato waste from the new plant. Thus, defendants contend that in entering into the contract with plaintiff, Snake River acted solely on its own behalf and not as agent for JS&B, and, in any event, since the condition on which enforceability of the contract depended never occurred, the agreement is of no effect.

Subsequent to the document between plaintiff and Snake River, a new contract was entered into by Lamb-Weston, JS&B and Snake River. This contract altered the rights and obligations of the parties in many respects but retained in JS&B the right to purchase the waste from the Hermiston plant under new terms giving Lamb-Weston part of the profits in the case of the resale of any waste by JS&B to third parties. The contract also terminated any cross-feeding rights between JS&B and Snake River. Simultaneously therewith JS&B and Snake River entered into a separate contract whereby JS&B would retain 25 percent of the waste from the Hermiston plant for its own use and would sell the balance to third parties under the management of Snake River, with JS&B and Snake River sharing in that part of the resale profits which did not accrue to Lamb-Weston. The contract did not sell JS&B's rights to the waste to Snake River.

Defendants then attempted to negotiate a con-

tract with plaintiff for the sale by JS&B of 50 per cent of the Hermiston plant's output at $1.67 per ton in excess of cost. After considerable negotiations plaintiff contended it was entitled to enforce its claimed original agreement with Snake River which provided for only $1.00 per ton over cost. While negotiations were going on the new plant commenced production and deliveries of potato waste were made to and accepted by plaintiff. JS&B billed plaintiff $5.97 per ton for the waste so delivered, which was $1.67 over its cost. Each time plaintiff received a billing it would remit $1.00 per ton over cost but JS&B would not accept the remittance. This went on for three to four months until deliveries were terminated and contract negotiations ceased. Defendants' counterclaim seeks recovery for the potato waste accepted by plaintiff during the period of negotiations after the plant came into production. The trial court fixed damages on the counterclaim on the basis of $11.49 per ton rather than on the $5.97 figure for which JS&B billed plaintiff.

■ Declaratory judgment proceedings requesting the construction of contracts are legal in nature, and factual determinations by the trier of fact which are supported by evidence are treated as final on appeal. *General Acc. Fire and Life v. Shasky,* 266 Or 312, 314, 512 P2d 987 (1973) ; *Truck Ins. Exch. v. Olinger Mercury,* 262 Or 8, 495 P2d 1201 (1972).

Plaintiff's first contention is that the trial court erred in not finding that the original written document between Snake River and plaintiff constituted an enforceable contract obligating Snake River and JS&B to sell to plaintiff the waste from the Hermiston plant at $1.00 per ton over cost. There was evidence from which the trial court could conclude that plaintiff knew that Snake River intended the deal to be contingent upon Snake River's purchase of JS&B's

rights to the waste from the Hermiston plant. The manager and principal stockholder of Snake River testified as follows concerning a conversation he had with plaintiff's manager leading up to the document of July 28:

> "Q. And could you relate to the Court, as you remember it, the conversation that you had during that telephone call with Ronald Baker?
>
> "A. Yes, I explained to him that I was in the process of trying to purchase Johns, Smith & Beamer's interest in the contract whereby I would take on the obligations that Johns, Smith & Beamer had, and not only the Hermiston plant that was being constructed, but also the Quincy and Connell plants, and that we might possibly be interested in building another feed yard but we couldn't build three of them, and would he be interested in purchasing the product from Hermiston, and he said yes, he would be. And I said, well, I had had a conversation with Mr. Johns indicating he might be, and that at one time he, as I understood it, that he was interested in purchasing at a dollar above our cost formula, would he still be interested in buying at that kind of figure, and he said yes, he would."

■ In addition, there was evidence that when plaintiff's manager was approached by Snake River and JS&B following consummation of the new agreement with Lamb-Weston, he did not at first contend that plaintiff already had a contract with defendants for $1.00 per ton over JS&B's cost even though the circumstances were such that it would have been usual for him to do so if he really believed plaintiff already had such a binding contract.

It is our conclusion that the evidence is sufficient to sustain the trial judge's findings that there was no enforceable contract between plaintiff and either Snake River or JS&B which arose out of the

writing of July 28 between Snake River and plaintiff whereby defendants were required to sell the output of the Hermiston plant to plaintiff at $1.00 per ton above cost.

■ Plaintiff contends Snake River was the actual or, at least, the apparent agent of JS&B in making the agreement of July 28. In view of our holding sustaining the trial judge's finding that the contract was not enforceable against Snake River, we do not have to deal with these contentions.

Plaintiff contends that the trial court erred in permitting the introduction of parol evidence varying the terms of the written document of July 28 executed by Snake River and plaintiff when it allowed defendants to show that it was not intended to be binding unless JS&B's rights were purchased by Snake River. The parol evidence rule, however, does not exclude evidence of prior oral understandings that a written agreement is not to become effective until the happening of some condition precedent. *Osburn v. Lucas,* 263 Or 480, 483, 502 P2d 1382 (1972) and cases cited therein.

Plaintiff's other contention is that the trial court erred in awarding judgment against plaintiff for any amount in excess of $5.97 per ton. In awarding judgment on the counterclaim on the basis of $11.49 per ton, the trial court relied on the testimony of the manager of Snake River. He testified that during the months in which the waste was delivered to and received by plaintiff the average price of feed grain was $72.00 per ton; potato waste has an energy food value of 85 per cent of that of feed grain, which would make dry potato waste worth $61.20 per ton. He then deducted the freight charges, which left a value of $57.45. Since the contract was based on an 80 per cent moisture factor, the value of a ton of wet potato waste as it

came from the processor would be one-fifth thereof or $11.49 per ton.

■ The measure of damages, however, is the fair *market* value of the waste. The witness's testimony discloses nothing about what potato waste was then selling for on the market. While food content is undoubtedly one of the principal factors which goes into determining the market value of feed, many other variables necessarily influence the determination of fair market value. The testimony of the witness, standing alone, is insufficient to establish fair *market* value in the face of the uncontradicted testimony that potato waste was being sold upon the market for $5.97 per ton. The evidence in this case revealed that waste from the same plant was being sold to others by JS&B at a price of $5.97 per ton and this was the amount billed by JS&B for the waste delivered to plaintiff. Defendants' counterclaim in fact requested that amount until defendants asked to amend their counterclaim to $11.49 per ton to conform to the proof.

We also believe the testimony requires a finding that neither plaintiff nor JS&B intended that the price of the potato waste would be more than $5.97 per ton if, for some reason, a contract between them was never finalized. This was the price JS&B represented to plaintiff that it wanted for the potato waste when plaintiff accepted it, and one of the principal obstacles to consummation of the contract was plaintiff's insistence that it was entitled by the prior agreement with Snake River to pay no more than $1.00 above JS&B's cost. Under such circumstances a finding is required that the maximum price that could be charged by JS&B would be no more than $5.97 per ton.

The part of the judgment of the trial court is affirmed which adjudicates that JS&B and Snake

River have no responsibility to plaintiff under the written document of July 28 between plaintiff and Snake River. The part of the judgment of the trial court awarding defendants the sum of $74,314.91 is reversed and the case is remanded to the trial court for entry of a judgment in favor of defendants and against plaintiff in the sum of $39,612.50 together with interest at 6 per cent per annum from May 1, 1973.