571 P.2d 138 (1977)
NORTH PACIFIC INSURANCE COMPANY, an Oregon Corporation, Appellant,
v.
FOREST INDUSTRIES INSURANCE EXCHANGE, M. Howard Harpole, Debra Hamlin, Maurice McConnell, Donald C. Earle and R.L. Bacon, Respondents.
Supreme Court of Oregon, In Banc.
Argued and Submitted September 9, 1977.
Decided November 8, 1977.
*139 Asa L. Lewelling, Salem, argued the cause and filed briefs for appellant.
Merle A. Long, Albany, argued the cause for respondents Forest Industries, M. Howard Harpole, Donald C. Earle and R.L. Bacon. With him on the brief were Daniel A. Post and Long, Bodtker & Post, Albany.
No appearance by respondents Hamlin and McConnell.
HOLMAN, Justice.
This is a proceeding for a declaratory judgment brought by an insurance company which has liability insurance coverage of one Steven Earle through a policy issued to his mother. The purpose of the proceeding is to determine whether the defendant insurance company (defendant) also had such coverage of the same insured through a policy issued to his father. The remaining defendants are of no relevance to this appeal except the defendants Hamlin and McConnell, who have made claims against the estate of Steven Earle.
Steven, who was 17 years of age, lived in Albany, Oregon, and was emancipated from his parents, who were divorced. His mother, who lived in Los Angeles, had no further use for a Buick automobile which she owned since she was moving to New York. After she consulted with Steven and his father, who also lived in Albany, she turned the vehicle over to Steven, who then went to Los Angeles to secure the Buick for the purpose of driving it back to Oregon. Steven's father instructed that a call be placed to him by Steven after the son arrived in Los Angeles and learned the particulars about the vehicle so that the father could secure insurance through his agent.
Steven did so call his father and, upon receipt of the information, the father called defendant's agent and instructed him to add another vehicle to the father's comprehensive liability policy which was issued by defendant to the father doing business as Lumber Processing & Manufacturing Company. Already covered by the policy were numerous vehicles owned by the father and one which was actually owned by Steven but not designated as such on the policy. The father testified that he did not inform his insurance agent of Steven's ownership of the Buick, and there is no testimony one way or the other whether the insurance company knew Steven owned one of the automobiles which was already purported to be insured under the policy. At the time the Buick was being added to the policy no inquiry was made concerning its ownership, and all that occurred was the father's call to the agent, who was told by the father to add the vehicle to his policy. Shortly after Steven returned to Oregon with the Buick, he was killed in the accident out of which the claims of the defendants Hamlin and McConnell arose.
The policy provided that the following persons were insured:
"(a) the named insured;
"(b) any partner or executive officer thereof * * *;
"(c) any other person while using an owned automobile * * * with the permission of the named insured, provided *140 his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * * *;
"(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b), or (c) above."
The policy also provided that none of the following was insured: "(ii) * * * the owner of a non-owned automobile * *." An owned automobile is defined as one owned by the named insured.
The case was tried upon a stipulation of facts, the deposition of Steven's father, and the policy of liability insurance issued by defendant to the father. The parties stipulated that the father
"* * * believing that he would have liability for the actions of Steven Earle * * * had the 1966 Buick added to his policy * * *. At the time the 1966 Buick was added to the policy and at all material times herein, Donald C. Earle [the father] was not the owner nor did he have any ownership interest in the 1966 Buick * * *."
No one is contending that Steven's father has any liability for the accident. Coverage, if it exists, must result from Steven's being an insured under the terms of defendant's policy.
Declaratory judgment proceedings are considered either equity or law cases depending upon the underlying nature of the problem which is sought to be clarified. State Farm Fire & Cas. Co. v. Sevier, 272 Or. 278, 299, 537 P.2d 88 (1975); Grange Ins. Ass'n.v. Zumwalt, 272 Or. 263, 266, 536 P.2d 428 (1975). We have held many times that the construction of an insurance policy by a declaratory judgment proceeding is in the nature of a law action. General Accident Fire & Life v. Shasky, 266 Or. 312, 314, 512 P.2d 987 (1973); Truck Ins. Exchange v. Olinger Mercury, 262 Or. 8, 10-11, 495 P.2d 1201 (1972).
Steven has no coverage by the literal terms of the policy because he was not driving a vehicle owned by the named insured. However, had Steven's father intended Steven to be covered, an argument might be made that the insurance company nevertheless had coverage of Steven because of its failure to inquire as to the ownership of the vehicle which was being added to the policy, because there was no showing that Steven's ownership was material to his coverage, and because there was already a vehicle purported to be covered by the policy which also belonged to Steven. On the other hand, if it was not the intention of either the father or the company to cover liability for Steven while operating the Buick, there could be no coverage. In view of the policy terms it cannot successfully be contended that the company intended to insure the driver of a vehicle which was owned by one other than the named insured where there is no testimony from which it could be found that the insurance company knew of Steven's ownership of any of the vehicles. Whether the father intended to secure coverage for Steven is a question of fact.
The stipulation recites that the father, "believing that he would be liable for the actions of Steven Earle * * * had the 1966 Buick added to his policy." His deposition shows that he also testified:
"Q. Well, here's what I had in mind. A lot of times, as you know, when you deal with an insurance man, particularly one that you are familiar with, he will say, `Don't worry, you are covered,' or words to that effect. I was wondering if Mr. Martin said anything to you after you conveyed this information which in substance and effect led you to believe that the 1966 Buick was in fact covered under your policy with Forrest [sic] Industries.
"A. Well, I guess I would answer that definitely yes. It was my intention to protect my interests by notifying them of the vehicle at the onset, that's precisely why I did it.
"* * *.
"Q. And the reason you added it to your policy is you had a fear that somehow the actions of your son might be *141 imputed to you and you would be responsible for it?
"A. That is exactly how I felt."
While there is other testimony of the father which is equivocal and from which the trial judge might have found that the father did intend to cover Steven's liability, the trial court could legitimately arrive at the conclusion, from the stipulation and testimony above set forth, that the father did not intend to cover Steven but intended to cover only his own responsibility for Steven's actions. While the trial court made no specific findings of fact, it did find generally that there was no coverage for Steven. This proceeding being in the nature of a law action, if there is any set of facts under the evidence which would justify such a conclusion, we must assume that the trial judge so found; and we, therefore, must assume that the trial court found that Steven's father had no intention of acquiring coverage for Steven but only intended to cover his own responsibility, if any. White v. Bello, 276 Or. 931, 936-37, 556 P.2d 1362 (1976). The contract by its terms providing no coverage for Steven and neither party intending such coverage, there could be none.
Our disposition of this matter makes it unnecessary to decide some of the other contentions of the parties which revolve around questions of "insurable interest," "unintentional concealment of ownership," "materiality of the ownership," and "estoppel."
The judgment of the trial court is affirmed.