Argued and submitted April 17, affirmed September 18, 1985

## SALEM RESOURCES, INC.,
*Respondent,*

*v.*

## U.S. CONSULTANTS, INC. et al,
*Appellants.*

## U.S. CONSULTANTS, INC.,
*Appellant,*

*v.*

## BERI, INC. et al,
*Respondents.*

(A8302-01297, A8305-02791; CA A31759)

706 P2d 970

Paul J. De Muniz, Salem, argued the cause for appellants. With him on the briefs were Garrett, Seideman, Hemann, Robertson & De Muniz, Salem.

Peter C. Richter, Portland, argued the cause for respondents. With him on the brief were Gregory A. Chaimov, and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Gillette, Presiding Judge, Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

These civil cases were consolidated for trial in Multnomah County Circuit Court. The issues at trial were whether a partnership exists between Salem Resources, Inc. (SRI) and U.S. Consultants, Inc. (USC) and, if so, the terms of the partnership.[1] The parties waived a jury trial for these issues. The trial court entered findings of fact, conclusions of law and a judgment. The court ruled that no partnership was formed between the parties and that stock in Beri, Inc. (Beri) held in the name of Salem Resources (SR), the putative partnership, should be transferred to SRI. USC and Wade Davis, USC's principal stockholder, appeal.[2] We affirm.

■　The first question is whether our review in this case is as in an action at law, as SRI contends, or as in equity, as USC contends. If it is as in an action at law, we resolve any disputed factual issues in favor of the party that prevailed below. If it is as in equity, our review is *de novo,* and we must make factual findings in order to state the facts of the case. Whether a declaratory judgment case is legal or equitable depends on its underlying nature. *North Pac. Ins. Co. v. Forest Indus. Ins. Exch.,* 280 Or 313, 317, 571 P2d 138 (1977). We therefore look at the underlying nature of the portion of this case that is on appeal.

The trial court's judgment requires that the court clerk enter judgment against USC and Davis on SRI's first claim for relief. That claim requested a declaration of the parties' rights and duties arising out of their dealings. Those rights and duties were essentially contractual. The construction of a contract is normally a legal matter. *C & B Livestock v. Johns,* 273 Or 6, 10, 539 P2d 645 (1975). Before the trial the

---

[1] SRI filed its complaint for injunctive and declaratory relief in Multnomah County. USC filed its complaint for injunctive and declaratory relief and damages in Marion County. The Marion County case was transferred to Multnomah County. The parties have treated *Salem Resources, Inc. v. U. S. Consultants, Inc.* as the primary case and the judgment appealed from refers primarily to claims made in it. Therefore, we will refer to the pleadings, the parties and the trial court's actions by their designations in that case.

There are a number of issues remaining to be resolved in the trial court which depend, at least in part, on the resolution of the issues presently on appeal. For that reason, we have discussed the issues at greater length than we might otherwise have done.

[2] The trial court made the appropriate rulings under ORCP 67B.

parties agreed to a pretrial order which described the primary issue to be tried as "whether a partnership exists between the parties and, if so, the terms of such partnership."[3] The creation of a partnership is a matter of contract and the determination of the parties' intent and whether a partnerhsip exists is a matter for the jury. *Call v. Linn et al,* 112 Or 1, 7, 12, 228 P 127 (1924).

The only relief requested in the issues segregated for trial was a declaration of the parties' rights. Therefore, the nature of the relief requested does not affect the scope of our review. Other parts of SRI's complaint sought damages for fraud and breach of contract and an injunction against USC and Davis interfering in the management of Beri. The injunction is the subject of other proceedings. The issues remaining for trial are predominately legal. The principal decision that the trial court made in this case, *i.e.,* that no partnership was formed, is a question of law. We conclude that review in this case is as in an action at law.

Beri owns commercial real estate in Oregon, Washington and Idaho. In early 1982, Beri was in deep financial trouble. Its current income was inadequate to cover its operating expenses and debt service. Many of its properties were mortgaged beyond their market value and foreclosures were imminent. Francis W. Smith, who controlled Beri through trusts of which he or his children were beneficiaries, had personally guaranteed about $2,000,000 of Beri's debt. He wanted to dispose of his interests in a way that would include releasing him from those guarantees. Any sale would require reaching agreements with Beri's three major creditors to restructure Beri's debt; that goal might not be realized without significant cash investment by a prospective buyer.

Davis, USC's principal shareholder, became aware of Smith's problems. He contacted Smith and offered to help him. Smith promised Davis a finder's fee if Davis found a buyer for Beri. Davis contacted several prospects, but found no buyer. Among those whom Davis contacted was Costa, a commercial real estate investor. Costa introduced Davis to several investors, but none was interested in Beri. In June,

---

[3] The Oregon Rules of Civil Procedure do not have a specific provision for pretrial orders similar to that in FRCP 16. No question is raised here about the effect of the pretrial order on the pleadings.

1982, Davis suggested that Costa himself get involved with Beri. While Costa had no experience in rescuing financially weak businesses, Davis claimed that he had the expertise needed to make Beri profitable if only he could use Costa's financial standing. Costa agreed to Davis' proposal, but only on the condition that Costa would contribute no time or money to Beri other than limited technical assistance by his employes, helping to lease space to national tenants and to pay Davis' expenses.

Thereafter, Costa obtained a $1.75 million letter of credit as evidence of his financial worth; he and Davis agreed that any money borrowed on the strength of that letter of credit would only be used for tenant improvements to Beri properties and that Costa had sole control over how much money, if any, would be borrowed. Davis represented that, with Costa involved, he could get Smith to sell Beri for no cash down and that he could then convince Beri's major creditors to restructure its debt so that its operating expenses and debt service could be paid out of its current income; ultimate repayment could then be delayed long enough to allow Beri to increase its income from better tenants. Once that was done, Costa and Davis (or companies that they controlled) would acquire Beri's stock as partners. In the interim, Davis would manage Beri for two and one-half years for a fee totaling $225,000 plus expenses, to be paid by Beri.[4] Davis anticipated that, by the time his management contract ended, the partners would be able to sell Beri at a profit. Costa formed a new company, SRI, as the entity which would join USC or Davis in the proposed partnership; SRI was to own 51 percent of the partnership and USC or Davis was to own 49 percent. The new partnership was to be known as Salem Resources (SR).

After weeks of negotiations, Smith was growing wary of Davis. In an effort to keep Smith interested, Davis and Costa signed a letter on August 31, 1982, detailing the terms of their relationship.[5] The trial court found that that letter did

---

[4] Because the stock purchase would be a no cash transaction, Davis would not receive a finder's fee from Smith. The management fee may, in part, have replaced the finder's fee.

[5] The letter was from Davis to Costa. Both signed it. It reads:

"Gentlemen:

"This will confirm that we have formed a partnership, the terms of which

not show an existing partnership and that its purpose was to further Davis' negotiations with Smith and with Beri's creditors, to protect USC's 49 percent interest if the transaction were completed and to memorialize SRI's intent to form a partnership with the understanding that there would be no significant investment of time or money by SRI or Costa. The court also found that Davis and Costa did not intend to form a partnership unless and until Beri's debt was restructured so that its current income could cover its expenses and service its debt; that restructuring of Beri's debt was a condition precedent to the existence of any partnership; and that if Smith and Beri's creditors had not needed a specific entity with which

shall be the subject of a more formal agreement between us, to be known as Salem Resources (the 'Partnership'), in which you are a 51% general partner, and U.S. Consultants, Inc. is a 49% general partner.

"The purpose of the Partnership is to acquire 85% of the outstanding shares of Beri, Inc., an Oregon Corporation ('Beri'), which is currently owned by Francis W. Smith, Sr. and his children, pursuant to an agreement substantially in the form attached hereto (the 'Agreement'). As the 51% partner, you shall have control over the Partnership's business affairs and I shall have no power to bind or obligate the Partnership without your consent.

"Prior to the closing under the Agreement (the 'Closing'), I will attempt to renegotiate the terms of the loans to which Beri is a party or to which its properties are subject, toward the end of (i) restructuring the total debt of Beri so that such debt shall be serviced by the total existing cash flow of the properties and otherwise satisfactory to you and (ii) release Smith and the Francis W. Smith Revocable Living Trust from their guarantys of all such loans. Such restructuring and releases are conditions of Closing and the restructuring is a condition of the obligations of the Partnership and yourself described in the following paragraph.

"Effective upon Closing, (i) you will obtain for the benefit of or provide directly to the Partnership a line of credit in the amount of $1,750,000, which line may be in various forms, including a letter of credit; (ii) you will contribute the sum of $12,500 to the Partnership to enable it to pay the legal fees referred to in the Agreement; and (iii) the Partnership or Beri will enter into a management agreement with me pursuant to which I shall receive $7,500 per month for management services to be rendered and $2,500 per month for expenses to be incurred in connection with the management of the properties owned by Beri for a term of 30 months, effective July 1, 1982, terminable only for cause.

"Without limiting the generality of your control of the Partnership, I acknowledge that the decision as to when, what amount and whether at all, to draw upon the line of credit will be solely in your control and at your discretion. I acknowledge that neither you nor any of your affiliates shall have any obligation whatsoever in connection with the Partnerhsip, the Agreement or Beri, except as expressly provided above.

"If the Closing does not take place, on or before April 30, 1983, or such later date you specify in writing, for any reason whatsoever, the Partnership shall be deemed thereupon terminated and neither party shall have any obligation to the other."

they could deal, Costa and Davis would not have called themselves partners at that time.[6]

In November, 1982, Davis, purportedly acting on behalf of SR, executed an agreement with Smith to purchase 85 percent of Beri's stock. Davis then began negotiating with Beri's three major creditors. When Costa became involved in those negotiations later that month, he learned that Beri's creditors would not agree that Davis' management fee could come out of Beri's current income. He also became aware that a potential major tenant would agree to lease space only if Beri would make $300,000 in improvements to one of its buildings. Costa then agreed that he would pay Davis' management fee and pay for the improvements on the condition that Davis would reduce his interest in the proposed partnership from 49 percent to 33 1/3 percent. Davis verbally agreed to that condition, but he never intended to honor his agreement. One of Beri's major creditors then insisted that the restructuring of Beri's debt had to be completed by December 31, 1982. By that date Costa and Davis were unable to come to terms with other Beri creditors who held a first mortgage on one of Beri's buildings. Foreclosure proceedings were pending on that mortgage and a summary judgment hearing was scheduled for January 17, 1983; Beri had no defense to that action. If the foreclosure occurred, the entire deal would collapse.

Davis then represented to Costa that, if Costa would sign an agreement reached with Beri's principal creditor and take Beri's stock in the name of SR under the November, 1982, agreement with Smith, Davis would formally acknowledge his reduced share in the partnership. Davis assured Costa that Beri's other creditors would "fall in line" once the agreement with Beri's principal creditor was signed. Relying on Davis's representations, Costa signed the agreement. As part of that transaction, Costa's New York lawyer sent a letter to Beri's principal creditor expressing his opinion that SR was an existing partnership formed under New York law. At trial, that lawyer testified that he based his opinion, in part, on Davis' agreement to reduce his share in the partnership and that, if he had known that Davis did not intend to reduce his

---

[6] There is no issue in the case whether Smith or Beri's creditors could hold SRI and USC liable as partners, by estoppel or otherwise, as to them. The only issue is whether SRI and USC are partners as to each other.

share, he would not have represented that SR was an existing partnership.

After Davis assumed management of Beri in early January, 1983, things went from bad to worse. Beri's three major creditors remained skeptical. Costa concluded that, unless he invested a minimum of $500,000, Beri would collapse. He agreed to provide additional money in exchange for the transfer of three Beri properties to three new limited partnerships in which he was the general partner. At first, Davis agreed that USC would contribute a share of the money and join the limited partnerships; he insisted later that Costa was first obliged to exhaust his full line of credit. That was directly contrary to the parties' understanding about the purpose for and use of Costa's letter of credit. Costa, nonetheless, continued to refer to USC and Davis as SRI's partners and to the "existing August 31, 1982, agreement" because of Davis' repeated assurances that he would honor his commitments. After further negotiations, Davis and Costa were unable to reach a formal partnership agreement. By that time, Costa, through SRI, had invested more than $900,000 in Beri. In February, 1983, Costa suspended Davis as Beri's manager. The parties then filed these actions.

■  The trial court found that a condition precedent to the formation of any partnership between Davis and Costa was that Beri's debt first be restructured so that its current income could cover its expenses and service its debt; that that condition was never met; and that, therefore, no partnership was ever formed. Those findings are supported by substantial evidence in the record and are binding on us.[7]

■  Costa invested in Beri on the strength of Davis' representations that a restructuring of Beri's debt would occur. After Costa learned that Davis had misled him, he continued to invest, not because of any partnership with Davis, but because he had made commitments from which he believed he could not ethically withdraw. The relationship that the proposed partnership contemplated is not the one that ultimately developed. The situation as it now exists came into being, not in August, 1982, but in early 1983, and USC

---

[7] There is sufficient evidence to support the trial court's finding that SRI did not waive the conditions stated in the August, 1982, letter.

and Davis failed to participate in its development. The trial court did not err in finding that there was no partnership between SRI and USC.

■ The other issue in the case is whether the trial court correctly ordered that the Beri stock be transferred to SRI. In the pretrial order, the parties presented opposing contentions as to the ownership of the Beri stock. The trial court made no explicit findings on this point, but its judgment ordering that the stock be transferred to SRI is consistent with, and ancillary to, its findings that no partnership existed between SRI and USC and with its determination that, if Davis has any legal claim to the stock, it is only as an agent or trustee for SRI. Such a determination is implicit in the court's other findings and it is supported by the evidence.

USC and Davis objected to the requirement that the stock be transferred to SRI on three grounds: the question of the parties' interests in the stock was not within the issues framed by the pretrial order and had not been litigated; the court's February 13, 1984, oral decision did not contain any findings, conclusion or direction on that issue; and, to the extent that there had been proof and argument on that issue, the evidence supported a finding that USC or Davis, or both, owned at least 42 percent of the stock. We have examined defendant's objection and conclude that it lacks merit. The parties adequately raised the issue of the ownership rights in the stock, and the trial court properly declared those rights. We find no error.

Affirmed.