## Lynda NELSON,
*Appellant,*

*v.*

## OREGON INSURANCE GUARANTY ASSOCIATION,
*Respondent.*

(A8712-07513; CA A51250)

794 P2d 1

Willard E. Merkel, Portland, argued the cause for appellant. With him on the brief was Galton, Popick & Scott, Portland.

David B. Gray, Portland, argued the cause for respondent. With him on the brief were Thomas K. Thorpe and Thorpe & Swensen, Portland.

Before Graber, Presiding Judge pro tempore, and Riggs and Edmonds, Judges.

EDMONDS, J.

Riggs, J., dissenting.

**EDMONDS, J.**

Plaintiff appeals from a declaratory judgment and assigns as error the trial court's conclusion that Forest Industry Insurance Exchange (FIIE) "was not required to follow the cancellation procedures mandated by [*former*] ORS 743.910." The issue is whether FIIE effectively deleted Michael Davis and his car from coverage under his parents' automobile liability policy.[1] We affirm.

Because this proceeding is in the nature of a law action, if there is any set of facts under the evidence that would justify the trial court's conclusions, then we assume the trial court so found. *See North Pac. Ins. Co. v. Forest Indust. Ins. Exch.,* 280 Or 313, 318, 571 P2d 138 (1977). The trial court could have found these facts: In December, 1982, Harold and Victoria Davis purchased automobile insurance from FIIE through its agent, Forsyth. The policy covered the Davis' son Michael and a 1975 Camaro automobile that Michael owned.[2] In September, 1984, Michael was 21 years old. He and his parents agreed that he would purchase his own insurance and that he would no longer be covered by his parents' policy with FIIE. Early in 1985, FIIE's underwriter noticed that Michael was the owner of the Camaro and instructed Forsyth to remove the vehicle from coverage under the policy. In January and February, 1985, Forsyth telephoned Victoria four times and informed her that coverage for Michael and the Camaro was going to be deleted from the policy at the request of the insurer. Forsyth testified that she "gave the Davis[es] a mandate: Michael comes off of the policy, there were no ifs ands or buts about it." During the last call, Forsyth and Victoria agreed that termination was to be effective as of February 21, 1985. On the same day, Forsyth sent this letter:

"February 14, 1985

"Dear Harold and Vicki,

"Per telephone conversation with Vicki today, I've advised FIIE to delete Mike and his Camaro from the policy effective February 21, 1985. If he hasn't replaced his coverage already,

---

[1] FIIE became insolvent after the purported termination of coverage, and claims against it are the responsibility of defendant Oregon Insurance Guaranty Association.

[2] Under the terms of the policy, Harold and Victoria were the policyholders and named insureds and Michael was a permissive driver for the Camaro.

this will give him a week to do so. I had left a message for him at work, but he didn't call me.

> "Sincerely,
>
> "/s/ Gerry"

On February 21, Forsyth spoke with Harold, who confirmed Harold's and Victoria's consent to the deletion. On March 20, Michael went to Forsyth's office to procure insurance. Michael and Forsyth discussed the fact that Michael's insurance coverage had been terminated, and Forsyth quoted him prices on other insurance alternatives. Michael indicated that he would return to the office the following Monday and pay for new insurance. He failed to keep that appointment. A bill reflecting the deletion and credit for the deletion, dated April 5, was received by Harold and Victoria within two or three days after that date. In addition to the billings, they received two declaration sheets, removing the Camaro from the policy and showing that Michael was no longer listed as a permissive driver. The endorsements were effective as of February 21, 1985, and were mailed to the Davis home on April 3. On April 14, plaintiff was injured while riding in the Camaro, which Michael was driving.

Plaintiff argues that, because FIIE did not comply with the notice requirements of *former* ORS 743.910(1), the coverage for Michael and the Camaro was still in effect on the date of the accident. *Former* ORS 743.910(1) provided:[3]

> "No notice of cancellation of a policy to which ORS 743.905 applies shall be effective unless mailed or delivered by the insurer to the named insured at least 20 days prior to the effective date of cancellation and accompanied by a statement of the reason or reasons for cancellation, provided, however, that where cancellation is for nonpayment of premium at least 10 days' notice of cancellation accompanied by the reason therefor shall be given."

*Former* ORS 743.900(4) provided:

> " 'Cancellation' means termination of coverage by an insurer, other than termination at the request of the insured, during a policy period."

---

[3] *Former* ORS 743.910 was renumbered ORS 742.564 and amended in 1989. Or Laws 1989, ch 426, § 3.

Plaintiff suggests that, because "[t]he statutory provision makes no distinction between partial termination of coverage (such as occurred when Michael Davis and the car he owned were 'deleted') and a total termination of coverage," defendant had to comply with *former* ORS 743.910(1). Defendant argues that the coverage for Michael and the Camaro was terminated on February 21, 1985, as a result of the mutual agreement of Harold and Victoria and that Harold and Victoria had authority to terminate the policy, because they were the named insureds, or that they were acting on Michael's behalf as his agents. It concludes that *former* ORS 743.910(1) is not applicable, because it applies to a "cancellation" at the instance of the insurer and not to termination of coverage by mutual consent.

The legislative history of *former* ORS 743.910 indicates that the legislature was concerned that an insured receive notice of cancellation of coverage sufficient to enable the insured to procure other insurance. Statement of the Insurance Commissioner, Exhibit 1, Senate Committee on Financial Affairs, March 18, 1971. That policy was deemed to be inapplicable to situations in which the insured requested termination. *See former* ORS 743.900(4). Had Michael's parents not agreed to a termination of coverage, FIIE would have been obligated to comply with *former* ORS 743.910(1). However, the evidence supports a conclusion that they intended to have coverage of Michael and the Camaro deleted from the policy and, when the opportunity arose to achieve that intention, they agreed with the insurer's request. Thereafter, Michael came to Forsyth's office to procure alternative insurance. Under those circumstances, the actions by Harold and Victoria were tantamount to a request by them for termination.[4] The trial court correctly ruled that FIIE was not required to comply with *former* ORS 743.910(1).

Affirmed.

---

[4] The dissent would construe the facts so that the result would be inconsistent with the trial court's general conclusion. The trial court made no specific findings of fact, except that it found that FIIE gave "written notice to the named insureds, Harold and Victoria Davis, that the Camaro was to be deleted from the policy" and "while written notice was not made on their son, Michael, he had actual knowledge of the deletion of the Camaro from [his] parent's policy prior to the accident." There is no evidence that Michael was a named insured. *Former* ORS 743.910(1) required that written notice be given to the named insured.

**RIGGS, J.,** dissenting.

Because the majority misconstrues the nature of this case and then misapplies the law, I dissent.

The only issue that the trial court decided was that a difference existed between a deletion of a car from a policy and a termination of coverage. The trial court concluded that that difference precluded the application of the cancellation statute to this case. Whether there is a legal difference for purposes of *former* ORS 743.900(4) between a deletion of a car from a policy and a termination of coverage is not discernible from the statute. When statutory language lends itself to more than one interpretation, we turn to legislative history as an aid to resolving ambiguity. *City of Portland v. Rice,* 94 Or App 292, 296, 765 P2d 228 (1988), *aff'd* 308 Or 118, 775 P2d 1371 (1989). There is no specific legislative history to explain the definition of cancellation found in *former* ORS 743.900(4). However, the legislative history of *former* ORS 743.910 reveals that the general policy behind requiring a notice before cancellation was to protect clients of the insurance industry from suddenly finding themselves uninsured and unable to procure other coverage. Statement of the Insurance Commissioner, Exhibit 1, Senate Financial Affairs Committee, March 18, 1971.

A "deletion" of a car from a policy leaves the vehicle and its owner with the same sudden need for insurance as a termination of an entire policy. Moreover, in *former* ORS 743.900(1), "coverage" is used in a more general sense as a component of an overall policy. Accordingly, deletion of an automobile from a policy should fall within the phrase "termination of coverage" in *former* ORS 743.900(4).

As both an employer and an agent for FIIE testified, the insurance company requested the cancellation. Forsyth acknowledged that she had never "received any indication from Harold or Victoria Davis prior to this February 14 letter that they wanted Michael off the policy." She also testified that FIIE "requested that [Michael] be taken off the policy[.]" Furthermore, according to Forsyth, her discussions with Mrs. Davis included "the fact that [her agency was] going to have to take [Michael] and the car off the policy at the request of [FIIE]." Although it is contended that the insured agreed to the cancellation, that agreement does not transform the request by the insurance company into a request by the

insured. Because the insured did not request the cancellation, respondent would have to comply with *former* ORS 743.910(1), which it did not do. The notice came seven days before the effective date of cancellation, not 20 days as required. Therefore, the cancellation was not effective.

Assuming, *arguendo*, that the majority's interpretation of the statute is correct, its analysis and conclusions are nevertheless wrong. The majority assumes that Michael's parents agreed to the termination. The Davises testified that, if they agreed to anything, it was only to a termination to take place once their son had obtained new coverage. Whether there actually was an agreement and what the contents of that agreement were are questions of fact that were not resolved by the trial court.[1] Furthermore, it is unclear whether the majority predicates it decision on an agency relationship between the parents and Michael, as urged by the insurer. Agency is a question of fact that needs to be resolved by the trial court. If the majority's holding is not predicated on an agency relationship, it fails to address whether the word "insured" in *former* ORS 743.900(4) refers to the son or to the parents. That is a relevant question in the light of the fact that *former* ORS 743.910(1) makes a distinction between an "insured" and a "named insured."

For these reasons, I dissent.

---

[1] The majority's reliance on *North Pac. Ins. Co. v. Forest Indus. Ins. Exch.,* 280 Or 313, 318, 571 P2d 138 (1977), is misplaced. We cannot assume that a trial court made certain findings when it never reached those issues. The trial court here made no findings about consent by the parents, but confined its conclusion to what it considered the "paramount issue": the difference, if any, between a deletion and a cancellation. Likewise, it never reached the issue of agency.