CLEVELAND, *Appellant,*
*v.*
SCIO SCHOOL DISTRICT NO. 95-C,
LINN COUNTY, OREGON, *Respondent.*
(No. 48830, CA 7971)

569 P2d 35

Edward L. Daniels, Albany, argued the cause for appellant. With him on the brief was Daniels & Corrigall, Albany,

Merle A. Long, Albany, argued the cause for respondent. With him on the brief was Long, Bodtker & Post, Albany.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

TANZER, J.

## TANZER, J.

Plaintiff appeals from a declaratory judgment interpreting two provisions of an agreement in which plaintiff agreed to supply bus transportation for defendant school district.

■■ Plaintiff's first contention is that the agreement granted him the exclusive right to transport students and that transportation of students on certain field trips by the district in its own vehicles constitutes a breach of contract. Plaintiff bases his conclusion on the following language in the agreement:

"* * * In addition, Contractor [plaintiff] shall, during the period of this agreement provide transportation for all students or other authorized personnel as may be required by District on field trips, excursions, athletic activities, or any other purpose designated by District."

The trial court concluded that this language did not grant plaintiff the exclusive right to transport all students in the district for all school activities. Although we find an intention to make plaintiff the exclusive outside provider of bus service, we concur that defendant's use of its own vehicles to transport students did not violate the agreement.

Our task in construing the agreement is to give effect to the parties' intention, which we deduce from the language used and the surrounding circumstances. *Miller v. Miller,* 276 Or 639, 647, 555 P2d 1246 (1976); *Spooner v. Polk County,* 19 Or App 557, 562, 528 P2d 597 *rev den* (1974). It was known to plaintiff at the time the agreement was signed that the district owned two passenger vans which it had used for occasional transportation of students while a previous similar contract was in effect with another bus company. This fact suggests that the parties did not contemplate that defendant would have to employ plaintiff's services for all transportation of students. We read the phrases "as may be required by District" and "any other purpose designated by District" as inartful expressions of the parties' intention that plaintiff was to be the exclusive

supplier of all bus transportation that defendant required from outside contractors—in other words, that transportation which it was not providing for itself.

Plaintiff's second contention concerns the escalation provisions under which plaintiff's compensation is adjusted to reflect changes in his operational expenses. The first paragraph of the clause recites the reasons for the escalation provision:

> "It is recognized by the parties hereto (1) that certain of the Contractor's operational expenses such as the cost of materials, services and labor may change materially, up or down, during the contract period;[1] (2) that such changes in cost cannot be determined in advance; (3) that without a realistic escalation clause in the contract, the parties must of necessity agree on a rate high enough to compensate for possible, yet unknown added costs to cover the entire term of the contract; (4) that if an escalation clause is included in a contract which is fair and just to both the Contractor and the District, cost projections can be more accurate and the corresponding rate will be lower than it otherwise would be."

The second paragraph contains an agreement

> "* * * that the compensation for the services described herein shall be adjusted each year up or down to coincide with the average annual change in the Consumer Price Index * * *."

The third paragraph contains the language which is the focus of this dispute:

> "In the event of any unusual circumstances, such as changes in State or Federal taxes, laws, or specifications or other conditions which causes any of the Contractor's operating costs hereunder to increase or decrease at a rate in excess of the Consumer Price Index, then the parties shall determine a reasonable and just amount to cover such increase or decrease and this amount shall be reflected into the aforementioned compensation rates."

---

[1] The contract is automatically extended each year unless notice of termination is given; once notice is given, the contract is to continue in effect for five more years.

Plaintiff interprets the third paragraph to mean that any conditions which cause his expenses to increase in excess of the Consumer Price Index (CPI) rate shall trigger an automatic recomputation of compensation above and beyond the CPI-based adjustment. In effect, plaintiff's interpretation would guarantee him an annual profit margin equal to that which he enjoyed in the first year of the contract. Defendant's interpretation would allow an adjustment for increased operating costs only where the precipitating conditions are "unusual." The trial court concluded that the unusual circumstances provision applies only where the plaintiff's expenses are affected by items that are not accounted for by the Consumer Price Index.

Where two parts of the contract appear to conflict or overlap, it is appropriate to read both paragraphs together and, if possible, to give a meaning to each which does not defeat the purpose of the other. *New Zealand Ins. v. Griffith Rubber,* 270 Or 71, 75, 526 P2d 567 (1974). The escalation provisions of this inartful contract appear to contemplate two types of future change of condition: cost increases in line with general inflation, as in the second paragraph; and cost increases from unforeseeable and unusual events or conditions, as in the third paragraph. The latter eventualities would include cost fluctuation of items within the Consumer Price Index which is substantially greater or less than the fluctuation reflected by the CPI generally.

The second paragraph presents no problem: the contract compensation rate is adjusted annually by a readily ascertainable percentage.

The third paragraph is problematical. In the event of an unusual occurrence, the parties have merely agreed to agree on a new compensation rate—and that has no contractually binding effect. There is no provision for arbitration or other certain means of compensation adjustment. The provision that "the parties

[ 949 ]

shall determine" a new, fair rate expresses a hope, not an enforceable legal obligation. If a party to the contract claims the benefit of such an occurrence, it may seek a new determination and, if there is no determination, that party is entitled to terminate the contract.

Because the parties have not alleged the existence of any unusual event or condition which, under the third paragraph would effect the termination of the contract, we have no cause to apply the contractual language to any specific facts. We therefore decline to provide further definition of the general language of the contract in the absence of a claim that such a terminating event has occurred.

Affirmed as modified.