Argued and submitted February 11, reversed and remanded in part with instructions; otherwise affirmed May 25, reconsideration filed May 27 allowed by opinion July 13, 1994

See 129 Or App 119, 816 P2d 868 (1994)

Robert S. WAYT,
*Respondent,*

*v.*

Donald G. BUERKEL,
*Appellant,*

*and*

POWDER VALLEY WATER
CONTROL DISTRICT,
*Respondent.*

(CV 91-06-34255; CA A78430)

875 P2d 499

W. Eugene Hallman argued the cause for appellant. With him on the briefs was Robert T. Mautz.

Douglas E. Hojem argued the cause for respondent Robert S. Wayt. With him on the brief were Patricia Sullivan and Corey, Byler, Rew, Lorenzen & Hojem.

No appearance for respondent Powder Valley Water Control District.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Defendant Buerkel appeals a declaratory judgment in favor of plaintiff Wayt.[1] He assigns error to the trial court's holding that plaintiff was entitled to a pro rata share of water pursuant to an irrigation contract and addendum to that contract, and that an appurtenant easement by implication exists in favor of plaintiff's property for the delivery of the water through a pipeline on defendant's property.

In 1972, the Acala Ginning Company (Acala) entered into a contract (Wolf Creek Irrigation Contract) with the Powder Valley Water Control District (District) to buy 1,200 acre feet[2] of water from the Wolf Creek Reservoir and use the water on its property, which later became known as the Pratt Ranch. A year later, the ditch used to convey Wolf Creek Reservoir water to the Pratt Ranch was replaced by a pipeline (W-1 Pipeline) that conveyed the water by gravity pressure. Acala entered into a contract (W-1 Pipeline Contract) to buy water from District for delivery through the pipeline. According to the terms of the W-1 Pipeline Contract, District agreed to deliver a maximum of 10.54 cubic feet per second (cfs) through the pipeline, and the water was to be used for irrigating 680 acres of the Pratt Ranch. When the W-1 Pipeline was built, Acala entered into another contract (On-Farm Contract) with District to finance construction of an irrigation system on the Pratt Ranch.

In 1976, Carol and Ronald Pratt (Pratts) and Heber and Edythe Glenn (Glenns) purchased the ranch from Acala. The Glenns are Carol Pratt's parents and owners of the Glenn Ranch, which abuts the northern border of the Pratt Ranch. Ronald Pratt's family owned the Kellum Ranch, which is east of the Pratt Ranch and separated from it by a freeway. Prudential Insurance Company (Prudential) financed the purchase of the Pratt Ranch and obtained a mortgage covering the Pratt and Kellum Ranches.[3] Prudential also obtained a separate security

---

[1] Defendant Powder Valley Water Control District made no appearance in this proceeding.

[2] An acre foot is the amount of water that will cover one acre one foot in depth, or 325,850 gallons. *Black's Law Dictionary* 23 (5th ed 1979).

[3] In 1975, the Federal Land Bank of Spokane obtained a mortgage on the Glenn Ranch.

interest in the three water contracts, the Wolf Creek Irrigation Contract, the W-1 Pipeline Contract and the On-Farm Contract.

The Pratts and the Glenns completed construction of the Pratt Ranch irrigation system. In 1980, the Glenns deeded their interest in the Pratt Ranch to the Pratts. In 1981, an addendum (Addendum) that amended the Wolf Creek Irrigation and W-1 Pipeline Contracts was executed by the Pratts and the Glenns, as successors to Acala. Prudential consented to the Addendum. The three ranches were run as one operation, although there was no formal partnership. The Pratts and the Glenns extended the irrigation system from the Pratt Ranch to the Kellum and Glenn Ranches. Ronald Pratt testified at trial that, when the Addendum was signed, the Pratts and the Glenns told District that 300 acre feet of the 1,200 acre feet of water allocated under the Wolf Creek Irrigation Contract would be applied to the Glenn Ranch and 300 acre feet would be applied to the Kellum Ranch. The irrigation system could irrigate only one ranch at a time.

In 1987, Prudential began foreclosure proceedings on the Pratt Ranch. Defendant, a friend of Ronald Pratt, entered into an agreement with him to purchase Prudential's interest and complete the foreclosure. Defendant also agreed to lease the Pratt Ranch to Ronald Pratt for three years with an option to repurchase it. Ronald Pratt was unable to repurchase the ranch, and defendant took possession in 1990.

Meanwhile, Federal Land Bank of Spokane (Federal Land Bank) was foreclosing on the Glenn Ranch. Prudential removed from the Glenn Ranch an above ground irrigation pipe that was subject to its mortgage on the Pratt Ranch. First Interstate Bank foreclosed on other irrigation equipment on the Glenn Ranch. However, before Federal Land Bank completed the foreclosure, the Glenn Ranch went bankrupt. Ronald Pratt purchased the redemption rights of the Glenn Ranch from the bankruptcy trustee. After plaintiff purchased the Glenn Ranch from Federal Land Bank, Ronald Pratt sought to redeem the property. Litigation over ownership of the Glenn Ranch eventually reached this court. We held that Ronald Pratt's redemption was untimely, as a matter of law, and that an order for a sheriff to issue a

certificate of redemption was void. *Federal Land Bank of Spokane v. Glenn,* 100 Or App 262, 265, 785 P2d 1069, *rev den* 310 Or 121 (1990).

District delivers water to the terminus of the W-1 Pipeline, at the southern property line of the Pratt Ranch, where there are two valves. One valve allows the property owner to regulate water flow onto the land; the other valve allows District to control water flow to the property owner and stop water delivery for nonpayment of assessments. When the Pratt and Glenn Ranches were operated together, District did not assess them separately. After foreclosure of the Glenn Ranch, District issued three separate statements for past due water assessments from 1984, 1985 and 1986 to Prudential and Federal Land Bank.

In June, 1991, plaintiff filed an action seeking a declaratory judgment establishing his right to a pro rata share of the 1,200 acre feet of water under the Wolf Creek Irrigation Contract and Addendum, an appurtenant easement for the delivery of that water to his property through defendant's property, and an easement in favor of District on defendant's property for the distribution of irrigation water from the W-1 pipeline to his property. Plaintiff also sought an order requiring defendant to allow him immediate access to his share of the water and enjoining defendant from preventing plaintiff's access to the water. After a trial, the court found that the Addendum expanded the delivery area of the W-1 Pipeline Contract and created a "form of water right" in favor of the Glenn Ranch. It found that the Glenns' prior use of the water pipeline on the Pratt Ranch created "an appurtenant easement by implication" in defendant's property in favor of plaintiff's property, and that an easement in favor of District exists on defendant's property for the distribution of irrigation water from the W-1 Pipeline to plaintiff's property. Finally, the court ordered defendant and District to allow plaintiff immediate access to his pro rata share of irrigation water from the Wolf Creek Reservoir and the W-1 Pipeline.

In his first assignment, defendant argues that the trial court erred in concluding that plaintiff has a right to District water. He asserts that plaintiff has no right to receive water under the Wolf Creek Irrigation, W-1 Pipeline or On-Farm Contracts. He further asserts that the Addendum did

not create a separate right to receive water on the Glenn Ranch. Finally, he asserts that any contract rights to receive water on the Glenn Ranch were assigned to Prudential and purchased by him during foreclosure of the Pratt Ranch.

██ It is undisputed that the Addendum amended the Wolf Creek Irrigation and W-1 Pipeline Contracts. The question is whether the Addendum created a right to receive water on the Glenn Ranch.[4] That is a question of contract interpretation that we review as a question of law. *See C & B Livestock v. Johns*, 273 Or 6, 10, 539 P2d 645 (1975); *Dry Canyon Farms v. U.S. National Bank of Oregon*, 84 Or App 686, 692, 735 P2d 620 (1987). Defendant argues that the following language of the Addendum indicates that the Addendum did not create a right to receive water on the Glenn Ranch:

"3. The W-1 Pipeline Irrigation Contract is amended to add the following:

"11. Landowner may apply in writing, prior to March 1 of each year, for allocation of water to lands other than those described in Exhibit 'A,' including land added by amendment herein, if any. The District shall, at its next regular meeting decide whether or not to allow the allocation for that irrigation season."

According to defendant, the Addendum merely provided permission to apply an undetermined amount of water to 600 acres on the Kellum and Glenn Ranches. Plaintiff responds that the following language contained in the Addendum's recitals demonstrates that the parties intended to create a water right:

"2. Additional lands are to be added to the W-1 Pipeline delivery area thereby equalizing the individual landowners' cost per acre, and the landowners and the District agree that it would be best to amend the original contracts.

"3. The W-1 Pipeline Irrigation Contracts should be amended to show the agreed to equalized amounts that the landowners should pay in accordance with the revised number of acres to be serviced by the W-1 Pipeline.

---

[4] We emphasize that this case involves a right to receive water acquired by a contract with an irrigation district. *See* ORS 553.760. This case does not involve common law or statutory water rights.

"4. The W-1 Pipeline Irrigation Contracts of those landowners adding land to receive W-1 Pipeline delivery should be amended to show the amount of additional acres, and the agreed to restriction on stream flow delivery.

"5. Certain lands were not included in the original Wolf Creek Irrigation Contract which should be so included, and those contracts should be amended to show the correct description of lands to be furnished with stored water from Wolf Creek Reservoir Project."

Where two parts of a contract appear to conflict, it is appropriate to read both paragraphs together and, if possible, to give meaning to each that does not defeat the purpose of the other. *Cleveland v. Scio School Dist.*, 30 Or App 945, 949, 569 P2d 35 (1977). Here, the language of the Addendum indicates that the parties intended to add the Glenn Ranch to the area receiving Wolf Creek Reservoir Water under the Acala Irrigation and W-1 Pipeline Contracts.

According to the Acala Irrigation Contract, District agreed to deliver 1,200 acre feet of irrigation water per year for use on the Pratt Ranch. The W-1 Pipeline Contract was an agreement to deliver water to 680 acres of those lands through a gravity pressure pipeline. It is undisputed that those agreements created contract rights to receive water on the Pratt Ranch.

The language of the recitals section of the Addendum expresses an intent to expand the area of delivery under the Acala Irrigation and W-1 Pipeline Contracts. Paragraph 5 of the recitals states that the "contracts should be amended to show the correct description of lands to be furnished with stored water * * *." Paragraph 1 of the agreement expressly adds the following language to the W-1 Pipeline Contract: "Under this contract, delivery of water to 600 acres is herewith added * * *." Thus, the Addendum extended the right to receive water under the Acala Irrigation and W-1 Pipeline Contracts to an additional 600 acres, which included the Glenn Ranch. The language that defendant cites in paragraph 3 of the Addendum simply requires that the landowner obtain permission from District before further expanding the delivery area and allocating water to any lands other than those covered by the original contracts or the Addendum.

Defendant also argues that the Addendum does not create a right to receive water, because it does not allocate a specific quantity of water to the Glenn Ranch. He further argues that, because District has a lien on all three ranches, "if plaintiff were to fail to pay assessments for water which has artificially been assigned to the Glenn ranch by the trial court, the district would be entitled to foreclose its lien on the Glenn, the Pratt or the Kellum ranches." Finally, defendant argues that there is no right to receive water, because there is no way separately to control the water flow to the ranches. He asserts that "[i]f *any* water is not paid for all parties could lose their irrigation." (Emphasis defendant's.)

The Wolf Creek Irrigation Contract provided for the delivery of 1,200 acre feet of water per year at a rate of 30.0 cfs. The W-1 Pipeline Contract provided for the delivery of that water at a rate of 10.54 cfs to irrigate 680 acres of land and purchase of "a pro-rata share of the capacity" of the pipeline. The recitals of the Addendum express the parties' intent to "equaliz[e] the individuals' cost per acre."

We agree with plaintiff that, because the parties intended to equalize cost on a per acre basis, they must also have intended to allocate the water on a per acre basis. That method of allocation comports with the pro rata share purchase required by the W-1 Pipeline Contract. Ronald Pratt's testimony also indicates that the water is to be allocated on a per acre basis. Pratt testified that, when the Addendum was signed, the Pratts and the Glenns told District that 300 acre feet would be applied to the Glenn Ranch and 300 acre feet would be applied to the Kellum Ranch. The evidence that District determined the individual allocations according to the ratio representing each ranch's proportion of the total delivery acreage when District issued separate assessments further suggests that the water should be allocated on a per acre basis. We conclude that the Addendum allocates the water by pro rata shares of the total delivery acreage.

The Acala Irrigation and W-1 Pipeline Contracts both state that, when recorded, they provide notice "that Landowner's real property is subject to a lien in favor of the District for irrigation water and to all maintenance and operation assessments * * *." In addition, it is undisputed that District cannot stop the flow of water to one ranch and

continue it to the other with the existing valve system. At the time the Addendum was signed, the Pratts and the Glenns were operating the ranches as a "farming partnership" and did not contemplate independent ownership and operation of the ranches. The Pratts and the Glenns sought to extend the right to receive water to their entire operation. The practical problems that now arise from unforeseen changes in ownership and operation of the ranches do not negate the establishment of that right.

We disagree with defendant's assertion that plaintiff did not obtain rights to receive water under the amended Acala Irrigation and W-1 Pipeline Contracts when plaintiff purchased the Glenn Ranch. Defendant first argues that, because the Federal Land Bank mortgage was taken in 1975 and the Addendum was not signed until 1981, Federal Land Bank could not have obtained an interest in the water contracts. His second argument is that the Glenns assigned their interest in the water contracts to Prudential as a part of the financing for the purchase of the Pratt Ranch and that he purchased that interest from Prudential.

■ Both the Acala Irrigation Contract and the W-1 Pipeline Contract contain the statement:

> "It is understood and agreed that the rights and liabilities herein contained shall run with and be binding upon the lands described in Exhibit 'A.' "

Thus, when the Addendum extended the contract right to receive water to the Glenn Ranch and the Addendum was recorded, the right became appurtenant to the Glenn Ranch. *In re Waters of Deschutes River*, 134 Or 623, 658, 286 P 563, 294 P 1049 (1930). Because that contract right became appurtenant to the ranch, Federal Land Bank's security interest included that contract right.

■ Moreover, Prudential had no interest in any right to receive water on the Glenn Ranch. By the terms of the "Assignment of Water Rights Agreement," the Pratts and the Glenns transferred to Prudential

> "their rights, title and interest in and to all water rights and/ or agreements pertaining to obtaining water for irrigation purposes on the mortgaged premises * * *."

Prudential's mortgage covered only the Pratt and Kellum Ranches. Thus, Prudential obtained a security interest in the right to receive water on those ranches. When Prudential sold all its interest in the Pratt Ranch to defendant, it sold defendant the ranch and its interest in the contracts creating a right to receive water on that ranch.

We conclude that the Addendum created a contract right to receive water on the Glenn Ranch by amending the Acala Irrigation and W-1 Pipeline Contracts, and that that contract right is appurtenant to the Glenn Ranch.

In his second assignment, defendant argues that the trial court erred in concluding that plaintiff has an implied easement by reservation over defendant's property. He asserts that factual errors formed the basis of the trial court's conclusions and that, "[w]ithout common ownership evolving into separate ownership of servient and dominant estates, an easement by implied reservation is impossible."

We review *de novo* the trial court's grant of the implied easement by reservation. ORS 19.125(3). Implied easements are not favored by the courts. *Dressler et al v. Isaacs et al*, 217 Or 586, 596, 343 P2d 714 (1959); *Liles v. Wedding*, 84 Or App 350, 353, 733 P2d 952 (1987). In order for a court to find that an implied easement by reservation exists, the circumstances at the time of severance of the land must permit an inference that the grantor would have intended to create an easement. *See Dressler et al v. Isaacs et al, supra*, 217 Or at 597. The *Restatement Property* provides practical, common sense guidance for determining whether there is an intent to create an implied easement. *See Rose et ux v. Denn et ux*, 188 Or 1, 24, 212 P2d 1077, 213 P2d 810 (1950). The *Restatement Property* § 474, *comment a* at 2972 (1944), says:

> "The creation of easements by implication usually occurs only upon the severance of a single possessory interest into two or more possessory interests. While both tracts are in one possession, the possessor, as such, is entitled to use all parts of the land as he sees fit. * * * Upon severance of the two parts the implication may arise that the possessor of one part is to have a use of the part not in his possession. The right of user thus arising may in a proper case constitute an easement * * *."

The *Restatement Property* § 476 (1944) provides a list of factors for the court to consider in deciding whether there is an implied easement.[5] *Cheney v. Mueller*, 259 Or 108, 485 P2d 1218 (1971). We need not consider those factors, because there was no severance of the land here.

■ In 1974, the Pratts and the Glenns purchased the Pratt Ranch. At that time, the Glenns also owned the Glenn Ranch. The Glenns had an interest in both ranches, but the titles to the properties were held separately. Thus, in 1981 when the Glenns deeded their interest in the Pratt Ranch to the Pratts, the property was not divided or severed. Instead, the Pratts became the sole owners of the ranch.

Plaintiff cites *Liles v. Wedding, supra,* to support the trial court's finding of an implied easement by reservation. However, there the plaintiffs and the defendant jointly owned 400 acres of land. Subsequently, they split the jointly owned land; the defendant conveyed approximately 100 acres to the plaintiffs by warranty deed and the plaintiffs conveyed approximately 300 acres to the defendant by warranty deed. 84 Or App at 352. After considering the *Restatement Property* § 476 factors, we concluded that the plaintiffs would have intended to create an easement at the time of the conveyance. 84 Or App at 355.

Unlike *Liles,* the joint owners of the Pratt Ranch did not divide that property. Plaintiff does not cite any case in which a court has found an implied easement by reservation without a severance of property. Given that the Pratt Ranch was not severed and that implied easements by reservation are not favored, we conclude that the trial court erred in

---

[5] Those factors are:

"(a)  whether the claimant is the conveyor or the conveyee,

"(b)  the terms of the conveyance,

"(c)  the consideration given for it,

"(d)  whether the claim is made against a simultaneous conveyee,

"(e)  the extent of necessity of the easement to the claimant,

"(f)  whether reciprocal benefits result to the conveyor and the conveyee,

"(g)  the manner in which the land was used prior to its conveyance, and

"(h)  the extent to which the manner of prior use was or might have been known to the parties." *Restatement Property* § 476 (1944).

finding that an implied easement by reservation exists in favor of plaintiff's property.

Plaintiff also alleged the existence of an easement by estoppel. However, the trial court did not reach that argument. Because our review is *de novo*, we address it. At trial, plaintiff argued that, because the Pratts and the Glenns were jointly involved in acquiring the Pratt Ranch, constructing the on-farm pipeline, extending that pipeline to the Glenn Ranch, and paying for those improvements, there was a tacit agreement that the Glenns would have access to the irrigation water through the pipeline on the Pratt Ranch.

However, Ronald Pratt testified at trial that the parties never agreed to the existence of an easement, because they "ran [the farming operation] as one unit and there was no need to discuss" an easement. He also testified that, if his redemption of the Glenn Ranch had been successful, he would have had to negotiate with defendant for permission to transport water to the Glenn Ranch. Pratt's testimony is corroborated by the fact that Federal Land Bank unsuccessfully negotiated with Pratt for an easement after it foreclosed on the Glenn Ranch and discounted the price of the ranch when it was sold to plaintiff, due to the lack of a recorded easement. We conclude that there was no oral agreement that an easement in favor of the Glenn Ranch existed on the Pratt Ranch. The theory of equitable estoppel and related doctrine of part performance are used to avoid the statute of frauds when parties enter into an *oral* agreement concerning the use of land. *Luckey et ux v. Deatsman*, 217 Or 628, 632-33, 343 P2d 723 (1959); *see also Royer v. Gailey*, 252 Or 369, 449 P2d 853 (1969). Because there was no oral agreement allowing the Glenns to use the Pratt Ranch, there is no easement by estoppel in favor of plaintiff's property for the delivery of water through defendant's property.[6]

Reversed and remanded with instructions to vacate finding of appurtenant easement by implication in paragraph 3 of judgment; otherwise affirmed.

---

[6] We note that defendant does not assign error to the trial court's holding that an easement in favor of District exists on his property for the distribution of irrigation water from the W-1 Pipeline to plaintiff's property.