# F.N. REALTY SERVICES, INC.,
an active California corporation as trustee
for Perla Development Company, Inc.,
an active Arizona corporation,
*Appellant,*

*v.*

# OREGON SHORES
RECREATIONAL CLUB, INC.,
an active Oregon corporation,
*Respondent.*

(92-02433 CV; CA A83888)

891 P2d 671

John A. Berge argued the cause for appellant. With him on the briefs was Holmes, Hurley, Bryant, Lovlien & Lynch.

William M. Ganong argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Plaintiff appeals from a declaratory judgment for defendant. The court held that provisions in the recorded Declarations of Restrictions of a subdivision created a lien in favor of defendant for annual assessments on lots within the subdivision. It further held that defendant's liens are superior to any interest of plaintiff or the interest of anyone claiming through plaintiff. We reverse.

The facts are undisputed.[1] Oregon Shores Unit 2, Tracts 1113 and 1184, is a rural residential subdivision located in Klamath County. Plaintiff is an escrow and real estate service agent acting on behalf of Perla Development Company, Inc. (Perla), which developed the subdivision. Plaintiff is the successor in interest to Wells Fargo Realty Services, Inc. (Wells Fargo), which assisted Perla with the initial marketing and sale of lots. Defendant is the nonprofit homeowners' association of the subdivision.

During development of the subdivision, Wells Fargo and defendant executed and recorded several documents entitled "Declarations of Restrictions." The Declarations of Restrictions are conditions, covenants, restrictions and agreements (CCRs) concerning construction and other activities in the subdivision. The CCRs are expressly made a part of all "conveyances, leases or rentals of all property" within the subdivision. They also authorize defendant to impose an annual assessment on each lot to pay for capital improvements and other services. The First Amended Declarations of Restrictions, which apply to Tract 1113 of Unit 2, were recorded on February 13, 1978. The Declarations of Restrictions for Tract 1184 of Unit 2 were recorded on November 16, 1978.

After the Declarations of Restrictions were recorded, Wells Fargo began selling lots on behalf of Perla. Most lots were sold for a down payment, with the balance to be paid over time. The purchasers signed promissory notes for the balance, which were secured by trust deeds that named Wells Fargo or plaintiff as the beneficiary. The trust deeds were recorded. Some purchasers defaulted, and plaintiff foreclosed

---

[1] The parties stipulated to a statement of facts, and neither party disputes the additional facts contained in the other's brief.

its trust deeds on those lots. Plaintiff paid defendant for some of the delinquent assessments.

In 1990, Perla and plaintiff concluded that foreclosure of a trust deed eliminated any existing delinquent assessment. Plaintiff subsequently foreclosed eleven trust deeds. It properly notified defendant of the foreclosure on six of the trust deeds, because defendant had recorded a "Notice of Default and Assessment of Lien." However, defendant did not participate in those foreclosures. Plaintiff did not notify defendant of the foreclosure on five other trust deeds, because there were no recorded notices of delinquent assessments on those lots. The delinquent assessments on the eleven lots remain unpaid.

Plaintiff filed a declaratory judgment action to determine whether it is liable for the delinquent assessments on the eleven lots. The court entered a declaratory judgment in favor of defendant. It held that the Declarations of Restrictions for Tracts 1113 and 1184 of Unit 2 run with the land and are binding on all parties owning or having an interest in the land. The court further held that the Declarations of Restrictions create a lien in favor of defendant for delinquent assessments, which is superior to any interest of plaintiff and anyone claiming through plaintiff.

In its only assignment, plaintiff argues that the court erred in concluding that any assessment levied becomes a lien with a priority date of the date when the Declarations of Restrictions were originally filed. It asserts that the CCRs are servitudes that authorize defendant to record a lien for delinquent assessments. *See Westwood Homeowners Assn., Inc. v. Lane County*, 318 Or 146, 152, 864 P2d 350 (1993), *mod* 318 Or 327, 866 P2d 463 (1994). Plaintiff's first argument concerns the lots without recorded liens for delinquent assessments. It argues that it was not required to provide notice to defendant of the foreclosure on those lots, because defendant had not recorded a lien, and that any interests of defendant were extinguished when the trust deeds were foreclosed. In its second argument, plaintiff acknowledges that defendant was entitled to notice of the foreclosure on the lots with recorded liens. However, plaintiff argues that, because "the recording of the 'notice[s] of default and assessment of lien[s]' occurred after the selling trust deed[s] [were] recorded," the

liens are inferior to the trust deeds. It further argues that, when it gave notice and defendant did not participate, the foreclosure of the trust deeds extinguished defendant's liens.

■    The questions here are whether the CCRs create a lien and, if so, whether foreclosure of a trust deed extinguishes the lien. We review the court's interpretation of the CCRs as a question of law. *Cf. C & B Livestock v. Johns*, 273 Or 6, 10, 539 P2d 645 (1975) (court reviews interpretation of a contract as question of law); *Wayt v. Buerkel*, 128 Or App 222, 227, 875 P2d 499, *mod* 129 Or App 119, 876 P2d 868 (1994).

The CCRs of the separately recorded Declarations of Restrictions are identical. They provide, in part:

"5.    CREATION OF LIEN AND PERSONAL OBLIGA-TION FOR ASSESSMENTS. Each member of the Oregon Shores Recreational Club, Inc., * * * hereby covenants, whether or not it shall be so expressed in their deed, to pay to the Oregon Shores Recreational Club, Inc. annual assessments or charges and assessments for capital improvements * * *.

"The annual assessment and assessments for capital improvements *if not paid within ninety (90) days of the due date*, together with costs and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the property against which each assessment is made * * *.

"*If any assessment is not paid within (90) days after the due date*, the Oregon Shores Recreational Club, Inc. may bring an action at law against the owner personally obligated to pay the same, or foreclose the lien against the property * * *.

"* * * * *

"8.    ENFORCEMENT OF RESTRICTIONS AND COVENANTS * * *.

"These restrictions shall be covenants running with the land and shall be binding upon all of such land and all parties and persons owning or having an interest in said land * * *."[2] (Emphasis supplied.)

_____
[2] The CCRs also provide that "[a]ll owners of land and contract buyers of land in said area shall be members of the Oregon Shores Recreational Club, Inc. * * *."

Those provisions authorize the imposition of an annual assessment. They also expressly require nonpayment of the assessment for 90 days before a lien is created. In other words, a lien exists when an annual assessment remains unpaid 90 days after its due date. A lien did not exist on recording of the Declarations of Restrictions, because no power of assessment had been exercised and no delinquent assessment existed. The power of assessment could not be exercised until the Declarations of Restrictions were executed.

That interpretation comports with the Supreme Court's decision in *Westwood Homeowners Assn., Inc. v. Lane County, supra*. There, CCRs authorized a homeowners' association to impose annual and special assessments and provided that such assessments were a " 'continuing lien upon the lot.' " 318 Or at 149. (Emphasis deleted.) The Supreme Court said that a failure to pay assessments resulted in the homeowners' association having a lien to secure payment of the assessments. 318 Or at 149. It also said that there could be no debt, and consequently no lien, until the association exercised its power to make an assessment. 318 Or at 154.

■ Defendant asserts that the recorded Declarations of Restrictions established its lien for delinquent assessments and entitled it to notice of the foreclosure sale. As we explained above, the Declarations of Restrictions authorize the creation of a lien upon failure to pay an assessment 90 days after it is due. Because the Declarations of Restrictions are recorded, they provide notice of the authority to impose a lien. A lien exists when that authority is exercised, but the holder of such a lien is not entitled to notice of a foreclosure sale unless the lien is recorded. *See* ORS 86.740(1)(c).[3] It is undisputed that defendant did not record liens on five of the lots. Thus, plaintiff was not required to provide notice to

---

[3] ORS 86.740(1)(c) provides:

"Subsequent to recording notice of default * * *, notice of the sale shall be served * * * or mailed * * * to the last-known address of the following persons or their legal representative, if any:

"* * * * *

"(c) Any person, including the Department of Revenue or any other state agency, having a lien or interest subsequent to the trust deed if the lien or interest appears of record or the beneficiary has actual notice of the lien or interest."

defendant concerning those lots, and the trust deed fore-closure sales extinguished any interest of defendant in the lots based on previously unpaid assessments.

■ Defendant's only argument regarding its recorded liens is that their priority dates are the dates the Declarations of Restrictions were recorded and, thus, are superior to the trust deeds. That is wrong for the reasons explained above. Accordingly, those liens were extinguished by the trust deed foreclosure sales. *See* ORS 86.770.[4]

Reversed and remanded with instruction to enter judgment in favor of plaintiff.

---

[4] ORS 86.770(1) provides:

"A sale made by a trustee under ORS 86.705 to 86.795 shall foreclose and terminate all interest in the property covered by the trust deed of all persons to whom notice is given under ORS 86.740 and 86.750 and of any other person claiming by, through or under such persons * * *."