Argued and submitted February 11, affirmed July 8, petition for review denied
October 7, 2009 (347 Or 258)

Viola EICHNER
and Virgil Eichner,
*Plaintiffs-Respondents,*

*v.*

Larry ANDERSON,
Shawn Anderson, Ronald Nelson, Nancy Nelson,
Gavrila Mircea, Dominica Mircea, William Dassenko,
James Tallman, and David Eby,
*Defendants,*

*and*

Lawrence CAMP,
Camelia Bleoaja, Cornel Bleoaja,
and Raymond J. Tallman,
personal representative of the
Estate of James Tallman,
*Defendants-Appellants.*

Clackamas County Circuit Court
CV05020385; A136323

212 P3d 521

John M. Petshow argued the cause and filed the briefs for appellants.

George W. Kelly argued the cause for respondents. On the brief was Jerry F. Kobelin.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

Plaintiffs, Viola and Virgil Eichner, brought an action to quiet title to a strip of real property in Clackamas County. The trial court found plaintiffs to be the owners of the property through adverse possession. On appeal, defendants contend that the court erred in determining that plaintiffs' occupation of the disputed land met the requirements for adverse possession and that, even if it did, plaintiffs' claim is barred by laches.[1] For the reasons stated below, we reject defendants' arguments, and we affirm.

On *de novo* review, ORS 19.415(3), we find the following facts, most of which were not disputed by contradictory evidence at trial. The strip of property in question is approximately 40 feet wide and runs east and west along the southern lot lines of defendants' properties. In 1943, plaintiffs purchased their property, which abuts and is south of the properties that defendants presently own. Between 1947 and 1964, plaintiffs did the following on the disputed strip: they cleared trees and dynamited tree stumps, pastured and herded cows, grew and harvested hay, maintained a fence along the strip's northern boundary, and controlled the growth of blackberry brambles in the strip's northwestern corner.

In 1973, plaintiffs commissioned a survey of their property, which revealed that their fence line was not coterminous with the northern boundary of their property as that boundary was described in their deed; rather, the fence was approximately 40 feet north of the deed line, extending into the properties to which defendants presently have title. Plaintiffs received a copy of that survey at or near the time that it was performed. One member of the survey crew testified that it was "pretty obvious" that plaintiffs had a claim for adverse possession of the 40-foot-wide strip and that he would have recommended retaining an attorney to resolve the matter.

---

[1] The trial court also concluded that defendant Eby had committed trespass on the disputed property. After the parties submitted their briefs to this court, Eby and plaintiffs reached an out-of-court settlement. Eby is no longer an appellant, and the trespass claim is no longer at issue.

In 1979, one of plaintiffs' neighbors to the north, the Kellars, determined that the boundary line of their property as described in their deed extended south past plaintiffs' fence to include one segment of the disputed strip. The Kellars tore out a section of the fence in an effort to reestablish the boundary line consistently with the deed. In response, plaintiffs brought an action to quiet title to that segment. They prevailed, securing title to the segment by adverse possession, and reconstructed the fence. At trial in the present case, Viola Eichner, then 87 years old, testified that she did not seek to join the other property owners along the fence line to that case because "[she] didn't know that [she] was supposed to sue everybody."

The fence line remained undisturbed from 1979 to 2003. In January 2003, defendant Eby purchased property adjacent to the northwestern boundary of plaintiffs' property and commissioned a survey. The survey indicated that the boundary described in Eby's deed included a segment of the disputed strip. Eby notified Viola Eichner that he intended to build a fence at the boundary line as described in his deed; Viola Eichner informed Eby that she believed that the disputed property belonged to her and that she would not consent to his building the fence on her property. Eby constructed the fence anyway.

In 2005, plaintiffs filed this action against Eby and others whose property abutted the disputed strip. As noted, the trial court found plaintiffs to be the owners of the disputed area. On appeal, defendants first argue that the record does not contain evidence sufficient to establish all of the elements of adverse possession. The facts as we find them—again, largely undisputed by testimony at trial—defeat that assignment of error, which we reject without further discussion.

■ Defendants also argue that plaintiffs' adverse possession claim is barred by laches because plaintiffs' "delay in bringing this action—more than twenty-four years since a decree was entered quieting title to a segment of the disputed strip—is unreasonable *per se* and defendants have been seriously prejudiced by the delay." For the reasons stated below, we also reject that argument.

In *Frasier v. Nolan*, 195 Or App 211, 215, 98 P3d 392 (2004), we stated that

> "[a] claim in equity is subject to the doctrine of laches, which dictates that a party may not delay in asserting a claim for an unreasonable amount of time after obtaining full knowledge of the relevant facts when the delay results in substantial prejudice to the opposing party. *Menard and Menard*, 180 Or App 181, 185, 42 P3d 359 (2002). Courts often look to an analogous statute of limitations to define a 'presumptively reasonable period' within which one may file a claim in equity. *Oregon State Bar v. Wright*, 309 Or 37, 42, 785 P2d 340, *cert den*, 489 US 829 (1990)."

When an action is commenced after the analogous statute of limitations period has run, the plaintiff bears the burden to prove the absence of laches. *Rise v. Steckel*, 59 Or App 675, 684, 652 P2d 364, *rev den*, 294 Or 212 (1982). Here, defendants contend that "laches began running no later than October 15, 1981, the effective date of the decree quieting title to the Kellar property" and that, "because plaintiff[s] delayed longer than the analogous statute of limitations in initiating this action, [they] had the burden of explaining the prolonged delay." According to defendants, plaintiffs have failed to meet that burden.

The trial court's letter opinion contained a thorough and careful analysis. Rather than attempt to improve on it, we incorporate it verbatim:

> "[A]n action to resolve an interest in land is presumptively timely if filed within 10 years of when the cause of action arose. ORS 12.040; ORS 12.140. * * * Defendants allege that the cause of action arose in 1979, because plaintiffs knew they had a claim for adverse possession of the entire strip of the disputed property at the time they filed a quiet title lawsuit against the Kellars. But the Court of Appeals has noted:
>
> " "* * * A property owner who has record notice of "possible problems" with the owner's title may, but is not required to, bring an action to eliminate those problems. *Meier v. Kelly*, 22 Or 136, 138, 29 P 265 (1892). When a property interest is actually repudiated or challenged, or an adverse claim is asserted against that interest, the property owner is obligated to act within a reasonable time to protect the owner's

interest[s].' *[Assn. of Unit Owners v. Far West Federal Bank]*, 120 Or App 125, 131[, 852 P2d 218] (1993).

"Under this decision, and the earlier decision in *Oliphant v. French*, 256 Or 341[, 472 P2d 275] (1970), the Court of Appeals has made it clear that *only an actual repudiation or challenge of a property owner's interest in property will trigger the need to take legal action to protect that interest*. In this case, there was an actual challenge to the Eichners' interest in a section of the disputed strip in 1979, but only by the Kellars, who challenged ownership of only one discrete section of property. The other neighbors did not appear to dispute the Eichners' ownership of the now disputed property. In 1979, the Eichners took action within a reasonable time to protect their interest against the clear challenger.

"Twenty-five years later, in 2003 or 2004, a new challenge was made to the Eichners' interest in the disputed strip when * * * Eby constructed a fence upon a field that the Eichners were obviously using. The instant case was filed soon after that to quiet title in the newly disputed property. This time, the Eichners exercised their discretion to join other neighbors as defendants * * *, although that was still not required. So, the cause of action for this case arose in 2003 or 2004, when * * * Eby directly challenged the Eichners' ownership of disputed property. Having brought this lawsuit within two years of the time the cause of action arose, the plaintiffs were timely and reasonable in asserting their claim. **This court concludes that laches does not bar plaintiffs' quiet title claim against any defendant.**"

(Footnote omitted; emphasis added; boldface in original.)

The foregoing analysis reflects a well-established principle: Although a limitation may be placed on the time within which a person who has a mere right of action shall bring it, "[l]imitation laws cannot compel a resort to legal proceedings by one who is already in the complete enjoyment of all he claims." Cooley's Constitutional Limitations 763-64 (8th ed); *see also Sheaff v. Spindler*, 339 Ill 540, 557-58, 171 NE 632 (1930) (claimant of title to land by adverse possession under valid deed of record is not guilty of laches in not promptly resorting to legal proceedings to remove cloud on

title); 74 CJS *Quieting Title* § 55 (2002) ("A plaintiff in possession under a claim of title is entitled to wait until possession is invaded or the title attacked before taking steps to vindicate it, and a mere lapse of time will not bar the action. Nor is laches a defense where the plaintiff * * * claims title by adverse * * * possession." (Footnotes omitted.)). We agree with the trial court's reasoning and with its conclusion that plaintiffs' action to quiet title to the disputed strip was not barred by laches.

Affirmed.