Argued and submitted January 6, reversed and remanded February 11, 2015

Gordon J. ZIELINSKI
and Kristy L. Zielinski,
*Plaintiffs-Respondents,*

*v.*

STATE OF OREGON,
*Defendant-Appellant.*

Marion County Circuit Court
11C24561; A154900

344 P3d 114

Patrick M. Ebbett, Senior Assistant Attorney General, argued the cause for appellant. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Jonathan M. Radmacher argued the cause for respondents. With him on the brief were Katie Jo Johnson and McEwen Gisvold LLP.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

## GARRETT, J.

In this declaratory judgment action, plaintiffs seek to compel the state to construct a railroad crossing on their property according to the terms of a 1906 deed. The trial court granted plaintiffs' motion for summary judgment. Because we agree with the state that plaintiffs' claim is untimely, we reverse and remand.

This case concerns a parcel of real property located in Marion County. In 1906, the owner, Egan, conveyed to the Oregon Electric Railway Company a 50-foot wide strip of the land (the "right-of-way") in exchange for $200. The deed contained the following provision:

> "The railroad company agrees to erect and maintain a lawful fence on both sides of the right of way also to construct and maintain one crossing when wanted by the grantor and it is further agreed that said railroad will be operated by overhead electric power only[.]"

It is undisputed that a crossing and fence at some point were constructed, as contemplated by the deed. It is also undisputed that, by the 1960s, both the fence and the crossing were in a state of complete neglect and disrepair, and that, by 2000, they had ceased to exist altogether.

The state acquired the right-of-way in 1998. Plaintiffs acquired the Egan property in 2008. In 2009, plaintiffs contacted the Oregon Department of Transportation (ODOT) and demanded construction of a crossing and fence pursuant to the 1906 deed. After ODOT refused, plaintiffs brought this action seeking a declaration that the state is obligated to reconstruct and maintain a crossing and fence. Both parties moved for summary judgment. In a letter ruling, the trial court granted plaintiffs' motion:

> "It is agreed by the parties that a fence was built and a crossing constructed. It is further agreed that prior to the 1960s both the fence and the crossing were neglected and came into complete disrepair. Nobody seemed to know how or why this happened or if this was done with or without everybody's agreement.
>
> "The defendant suggests that its predecessor breached the agreement and the statute of limitations would have run and this would affect the doctrine of laches. At this

point the court has no evidence that the defendant predecessor breached the agreement. For all we know the plaintiffs' [predecessor] abandon[ed] the crossing or agreed with defendant's predecessor that it was not needed at that time but may be needed in the future. There are a myriad of reasons for the crossing[']s non usage.

"In this court's opinion laches does not apply mainly because the result[] does not disadvantage or prejudice the defendant.

"The plain language of the deed is to 'construct and maintain one crossing when wanted.' This wording does not suggest any time limitation therefore the court shall order a fence and crossing be built as the plaintiffs want at the present time.

"I will grant summary judgment unless someone has evidence of what went on in the past as to the crossing."

In a motion for reconsideration, the state acknowledged that no evidence could be found as to the reason why the crossing ceased to exist, but argued that the absence of such evidence illustrated why the doctrine of laches should apply. The trial court denied the state's motion and entered judgment. The state appeals, assigning error only to the trial court's granting of plaintiffs' motion for summary judgment.[1]

Summary judgment is appropriate when the moving party has shown that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Ivanov v. Farmers Ins. Co.*, 344 Or 421, 428, 185 P3d 417 (2008). As noted, the parties do not dispute the relevant facts. They do, however, disagree about the applicable law. *F.N. Realty v. Oregon Shores Recreational Club*, 133 Or App 339, 343, 891 P2d 671, *rev den*, 321 Or 284 (1995) (stating that the correct interpretation of conditions, covenants, and restrictions on real property is a question of law).

On appeal, the state offers three reasons why the trial court should have denied plaintiffs' motion for summary judgment. The state argues that (1) the deed's requirements to "erect and maintain a lawful fence" and "construct and maintain one crossing" were satisfied and do not entitle

---

[1] Although the state also moved for summary judgment, the state does not assign error to the trial court's denial of the state's motion.

plaintiffs to new construction; (2) the demand for new construction was not made within a reasonable time after the covenant was breached and is therefore barred by the doctrine of laches; and (3) plaintiffs may not enforce the covenant because it was breached long before they acquired the property, and a breached covenant does not run with the land. Plaintiffs argue that the state's interpretation of the deed's requirements is too narrow and that the state misapprehends the law of laches and affirmative covenants.

The state's first contention is that the plain meaning of the deed does not require the state to build a new crossing and fence. "In interpreting a deed, our objective is to ascertain the meaning that most likely was intended by the parties who entered into it." *James B. House Living Trust v. Thompson*, 230 Or App 595, 600, 217 P3d 228 (2009). To do so, we look first to the text of the deed itself "considering its text in the context of the document as a whole." *Id.* The state argues that the obligation to build and maintain a crossing and a fence was "already satisfied" and that "[n]othing in the text of the deed required the covenantor to accede to requests for the construction of a new crossing and a new fence after the structures originally built under the terms of the covenant no longer existed." The state also reasons that "maintain" means "to keep in a state of repair, efficiency, or validity : preserve from failure or decline," *Webster's Third New Int'l Dictionary* 1362 (unabridged ed 2002)—which cannot be accomplished for structures that no longer exist—and cannot be interpreted to include reconstruction. Plaintiffs counter that the state and its predecessors had an ongoing obligation to provide for one crossing and one fence and that reconstruction can be "a type of necessary maintenance."

To the extent that the state takes a categorical position that "maintain" cannot encompass a requirement to reconstruct, we disagree. "Maintain" can have a more expansive meaning than the state suggests. The same dictionary cited by the state also defines "maintain" to mean "to provide for : bear the expense of." *Webster's*, at 1362.[2]

---

[2] At the time that the 1906 deed was drafted, "maintain" also encompassed that more expansive meaning, *Webster's Int'l Dictionary of the English Language* 884 (unabridged ed 1907) (defining "maintain" to include "[t]o bear the expense of; to support; to keep up; to supply with what is needed").

As such, and viewed in context, the intent of the original parties can be understood to contemplate that the grantee would construct and ensure the continued existence of one crossing and one fence. A corollary to that intent would be that, under some circumstances (*e.g.*, if the grantee simply ignored routine maintenance), the grantee might have to undertake substantial or even complete reconstruction to fulfill its obligation. The question, therefore, is whether the obligation to "construct and maintain" encompasses an obligation to rebuild the crossing and fence under *these* circumstances—where the structures ceased to exist several decades ago, with no apparent complaint from the grantor or his successors until plaintiffs contacted ODOT in 2009.

That brings us to the state's laches defense. To prevail under that doctrine, a defendant ordinarily must show that (1) the plaintiff delayed raising the claim for an unreasonable period of time, (2) from when the plaintiff had knowledge of the relevant facts, and (3) the defendant was substantially prejudiced by the delay. *Fontana v. Steenson*, 145 Or App 229, 232, 929 P2d 336 (1996) (citing *Mattson v. Commercial Credit Business Loans*, 301 Or 407, 419, 723 P2d 996 (1986). Plaintiffs argue that the state failed to prove any of those elements. At least as to the third element, prejudice, the state concedes that it did not present affirmative evidence of prejudice below, but the state argues that it did not have to. Laches was presumptively established, the state reasons, by the length of time that elapsed since the covenant was breached, which shifted the burden to plaintiffs to prove that laches does *not* apply.

The state relies on the principle that the analogous statute of limitations for an action at law may be used to establish a presumptively reasonable period in which the plaintiff must bring a claim, and that, when that period has expired, "there is a rebuttable presumption that the elements of laches have been sufficiently proven." *Fontana*, 145 Or App at 232; *see also Eichner v. Anderson*, 229 Or App 495, 499, 212 P3d 521, *rev den*, 347 Or 258 (2009) ("When an action is commenced after the analogous statute of limitations period has run, the plaintiff bears the burden to prove the absence of laches."). The analogous statute of limitations that applies to the breach of a 1906 deed is 10 years. *See*

ORS 12.070 (applying to actions upon "sealed instruments" executed before 1965).

Plaintiffs argue that the analogous statute of limitations establishes *only* a presumptively reasonable period. That is, plaintiffs appear to contend that the passage of time creates a rebuttable presumption in a defendant's favor only as to the first and second elements of laches, and that defendant continues to bear the burden of proving prejudice. That is an incorrect interpretation of *Fontana*, where, citing prior cases, we explained that, after the analogous limitations period has expired, "there is a rebuttable presumption that *the elements of laches* have been sufficiently proven." 145 Or App at 232 (emphasis added); *see also Rise v. Steckel*, 59 Or App 675, 684, 652 P2d 364, *rev den*, 294 Or 212 (1982) ("When an action is commenced after the expiration of the analogous statute of limitations, the plaintiff has the burden to prove the absence of laches.").

*Fontana* involved, among other things, a claim for an accounting of a partnership ("Partnership A"). The analogous statute of limitations was six years, and Partnership A had been dissolved more than six years earlier. 145 Or App at 232 (citing ORS 12.080 (providing a six-year statute of limitations for breach of contract)). We affirmed the trial court's grant of summary judgment against the plaintiff, reasoning that the

> "defendants needed only to offer uncontroverted evidence of the date of the partnership's dissolution in order to make a *prima facie* showing of laches as to plaintiff's accounting claim on Partnership A. Plaintiff offered no evidence to contradict that presumption, and therefore, there were no genuine issues of material fact regarding defendants' laches defense as to Partnership A. The trial court did not err in granting summary judgment on the accounting claim for Partnership A."

*Id.* at 233. Thus, once the analogous statute of limitations period has elapsed, all of the elements of laches, including prejudice, are presumed.[3]

---

[3] In discussing a second partnership, Partnership B, as to which the accounting claim had been filed *within* the last six years, the court addressed whether defendants had been prejudiced by the delay. *Id.* at 234. The fact that the court

Plaintiffs brought this action on December 12, 2011. We agree with the state that, under *Fontana*, if plaintiffs' claim arose more than 10 years before that date, then the state benefits from a rebuttable presumption that laches applies, and plaintiffs must prove that it does not. The state argues that the claim arose when the crossing and fence ceased to be functional. There is no dispute that they had ceased to exist by 2000. Accordingly, the state argues, plaintiffs' predecessors necessarily knew more than 10 years prior to December 12, 2011, that the covenant had been breached.

Plaintiffs make two arguments in response. Neither is availing. First, plaintiffs argue that "[c]onstructive notice of the relevant facts is not sufficient to trigger whatever statute of limitations serves as the presumptively reasonable period." *Frasier v. Nolan*, 195 Or App 211, 216, 98 P3d 392 (2004). Rather, full or actual knowledge of the relevant facts is required. That is a correct statement of the law, but it does not help plaintiffs, whose predecessors had full knowledge of the relevant facts related to breach of the covenant as soon as the railway crossing and fence deteriorated to the point of being unusable. Plaintiffs make no argument as to why a person with knowledge of (1) the covenant to "maintain" the crossing and fence and (2) the obvious failure to do so needed any more information to be aware of the breach.

Plaintiffs' second argument is that the terms of the covenant contain no temporal limitation; the grantee was required to construct and maintain one crossing "when wanted." Thus, according to plaintiffs' interpretation of the deed, the covenant could not be breached simply by failing to maintain the fence and crossing; rather, the failure to maintain must have occurred at a time when the owner "wanted" those improvements to be maintained. Therefore, plaintiffs reason, the history of neglect and disuse is irrelevant because there was no breach until plaintiffs made a demand for performance that was refused.

It is true that, "[w]here the covenant requires the performance of an affirmative act or acts, the statute of

---

did not similarly address prejudice as to Partnership A illustrates the applicability of the rebuttable presumption as to *all* of the elements of laches, including prejudice.

limitations governing an action for breach of the covenant does not begin to run until there has been a demand for performance by one entitled to such performance." *Covenants, Conditions, and Restrictions*, 20 Am Jur 2d § 44 (2005). Plaintiffs' argument, however, ignores the fact that performance was demanded, and provided, long ago. The grantee got what he bargained for—the construction of a crossing and fence, which were maintained for some time. The grantee was entitled to the ongoing maintenance of that crossing and fence and had a claim for breach when the grantor failed in that duty. Decades later, however, for whatever reason, the grantee or its successors had allowed the crossing and fence to enter into a state of decrepitude without complaint (as far as this record shows). One of two things must be true. First, the grantor's performance may have been excused because the covenant was abandoned. *Id.* at § 228; *Norby v. Sec. Line Drainage Dist.*, 159 Or 80, 88, 76 P2d 966 (1938) (holding that a covenant to build and maintain a well ended when the plaintiffs abandoned the well for another source of water). Alternatively, the grantee simply sat on his rights.

Plaintiffs' interpretation of the covenant would mean, in effect, that the grantor would be required to rebuild a crossing and fence an unlimited number of times, in perpetuity, depending on the desires of the grantee's successors at a particular time. A more natural and reasonable interpretation of the covenant is that the grantor undertook to construct the fence and crossing a single time and to maintain them for as long as the grantee desired.[4]

For the foregoing reasons, we conclude that the trial court erred in granting plaintiffs' motion for summary judgment.

Reversed and remanded.

---

[4] Our conclusion obviates the need to address the state's third argument, that plaintiff may not sue to enforce a covenant that was breached before they acquired the property.